CASE BEING CONSIDERED FOR TREATMENT PURSUANT TO RULE 34(j)
OF THE COURT'S RULES

No. 24-5049

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

JOHN DOE,
APPELLANT,

v.

THE FEDERAL DEPOSIT INSURANCE
CORPORATION and JONATHAN MCKERNAN,
in his official capacity as Director of FDIC,
APPELLEES.

ON APPEAL FROM A JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**APPELLANT'S BRIEF
PUBLIC COPY – SEALED MATERIAL DELETED**

Joanna K. Wasik
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN
AFFAIRS
700 14th St. #400
Washington, D.C. 20005
Tel. (202) 319-1000
Fax (202) 319-1010

Alexandra Lichtenstein
Kelsi Brown Corkran
Joseph W. Mead
INSTITUTE FOR CONSTITUTIONAL
ADVOCACY AND PROTECTION
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, D.C. 20001
(202) 662-9042
alex.lichtenstein@georgetown.edu

*Counsel for Plaintiff-Appellant*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

## A.     Parties and Amici

1. Plaintiff in district court and appellant in this Court is John Doe.[1]

2. Defendants in district court and appellees in this Court are Jonathan McKernan, in his official capacity as Director of the Federal Deposit Insurance Corporation, and the Federal Deposit Insurance Corporation.

3. There were no amici or intervenors in district court, and there have been no amici or intervenors in this Court to date.

## B.     Rulings Under Review

The ruling under review is the Order entered on February 23, 2024 (ECF No. 5, App. 32-37) by Chief Judge Boasberg.

## C.     Related Cases

This case has not previously been before this Court or any court other than the district court.  Counsel for the plaintiff-appellant is unaware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

*/s/ Alexandra Lichtenstein*
Alexandra Lichtenstein

---

[1] A document disclosing Dr. Doe's identity is located in the sealed supplemental appendix.  *See* App. 57.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................. iv

GLOSSARY ................................................................................. vii

INTRODUCTION ........................................................................... 1

STATEMENT OF JURISDICTION ..................................................... 3

STATEMENT OF THE ISSUE .......................................................... 4

STATEMENT OF THE CASE ........................................................... 4

    A.    Legal Background ............................................................4

    B.    Factual Background...........................................................6

    C.    Prior Proceedings .............................................................8

SUMMARY OF ARGUMENT .......................................................... 12

STANDARD OF REVIEW ............................................................... 14

ARGUMENT ............................................................................... 14

I.    Dr. Doe's Pardoned, Sealed Convictions are Sensitive and Highly Personal Information ................................................................ 14

    A.    The district court erred in failing to consider the pardon and sealing of Dr. Doe's convictions when weighing the first factor. ......15

    B.    Dr. Doe detailed the extensive harms he would experience if his criminal history were disclosed.........................................................20

II.    The Presence of Governmental Defendants Does Not Weigh Against Pseudonymity In This Case ......................................................... 28

CONCLUSION ............................................................................. 34

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

## Cases

*Am. C.L. Union v. U.S. Dep't of Just.* ("*ACLU II*"), 750 F.3d 927
(D.C. Cir. 2014) ....................................................................... 16, 17, 27

*Am. C.L. Union v. U.S. Dep't of Just.* ("*ACLU I*"), 655 F.3d 1
(D.C. Cir. 2011) .............................................................................. 18, 21

*Barker v. State*, 402 N.E.2d 550 (Ohio 1980)............................................. 21

*City of Pepper Pike v. Doe*, 421 N.E.2d 1303 (Ohio 1981) ................................. 17

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)........................................ 14

*Doe 1 v. Geo. Wash. Univ.*, 369 F. Supp. 3d 49 (D.D.C. 2019) ............................ 32

*Doe I-VII v. Sturdivant*, No. 06-10214, 2006 WL 8432896
(E.D. Mich. Apr. 7, 2006) ...................................................................... 19

*Doe v. Benoit*, No. 1:19-cv-01253, 2019 WL 13079193
(D.D.C. Apr. 30, 2019) ......................................................................... 24

*Doe v. Cabrera*, 307 F.R.D. 1 (D.D.C. 2014)............................................... 32

*Doe v. Frank*, 951 F.2d 320 (11th Cir. 1992) ....................................... 5, 26, 28, 32

*Doe v. Lee*, No. 3:22-cv-00569, 2023 WL 2587790
(M.D. Tenn. Mar. 21, 2023)................................................................... 19

*Doe v. Rentgrow, Inc.*, No. 23-cv-00860, 2023 WL 6541998
(D. Nev. Aug. 3, 2023)......................................................................... 20

*Doe v. Ronan*, No. 1:09cv243, 2009 WL 10679478 (S.D. Ohio June 4, 2009) ..... 19

*Doe v. Stegall*, 653 F.2d 180 (5th Cir. Unit A Aug. 1981)................................. 5, 26

*Doe v. U.S. Healthworks Inc.*, No. CV 15-05689, 2016 WL 11745513
(C.D. Cal. Feb. 4, 2016) ....................................................................... 20

*Doe v. Webster*, 606 F.2d 1226 (D.C. Cir. 1979) ........................................... 21, 27

*E.B. v. Landry*, No. 19-862, 2020 WL 5775148 (M.D. La. Sept. 28, 2020) .......... 19

iv

*Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*, 656 F.2d 856
  (D.C. Cir. 1981) ................................................................. 25

*Horowitz v. Peace Corps*, 428 F.3d 271 (D.C. Cir. 2005)..................................... 26

*In re Sealed Case* ("*In re Sealed Case II*"), 971 F.3d 324
  (D.C. Cir. 2020) ................................................... 3, 11, 13, 25, 29, 30

*In re Sealed Case* ("*In re Sealed Case I*"), 931 F.3d 92
  (D.C. Cir. 2019) ......................................................... 4, 5, 6, 14

*J.W. v. District of Columbia*, 318 F.R.D. 196 (D.D.C. 2016) ............. 18, 19, 31, 32

*James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993) ................................... 4, 5

*Kickapoo Tribe of Indians of the Kickapoo Reservation in Kan. v. Babbitt*,
  43 F.3d 1491 (D.C. Cir. 1995) ............................................. 14

*Lozano v. City of Hazleton*, 496 F. Supp. 2d 477 (M.D. Pa. 2007)........................ 31

*Nat'l Ass'n of Waterfront Emps. v. Chao,* 587 F. Supp. 2d 90
  (D.D.C. 2008)................................................................. 25, 32

*S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707
  (5th Cir. 1979)................................................................. 25, 32

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008) ..................... 30

*State v. Pariag*, 998 N.E.2d 401 (Ohio 2013)......................................... 6

*Stern v. Fed. Bureau of Investigation*, 737 F.2d 84 (D.C. Cir. 1984) ............. 17, 24

*U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749
  (1989) ...................................................................... 17

*United States v. Microsoft Corp.*, 56 F.3d 1448 (D.C. Cir. 1995)..................... 4, 32

*Yaman v. U.S. Dep't of State*, 786 F. Supp. 2d 148 (D.D.C. 2011)........................ 32

## Statutes, Rules, and Legislation

12 U.S.C. § 1822 ...................................................................... 1, 8

15 U.S.C. § 1681b ...................................................................... 9

D.D.C. LCvR 40.7 .............................................................................................. 9

Ohio Rev. Code Ann. § 2953.32 ....................................................... 2, 7, 16, 17, 24

Ohio Rev. Code Ann. § 2967.04 ................................................................. 6, 16, 23

S.B. 288, 134th Gen. Assemb. (Ohio 2023) ........................................................... 7

## Other Authorities

Crosby Hipes, *The Impact of a Felony Conviction on Stigmatization in a Workplace Scenario*, 56 Int'l J. of L., Crime, and Just. 89 (2019) .................... 27

John R. Stanish, *The Effect of a Presidential Pardon*, 42 Fed. Prob. 3 (1978) ...... 27

Isabel Brawer Stark, *Expungement and Sealing of Arrest and Conviction Records: The New Jersey Response*, 5 Seton Hall L. Rev. 864 (1974) .............................. 27

# GLOSSARY

FCRA      Fair Credit Reporting Act

FDIC      Federal Deposit Insurance Corporation

**INTRODUCTION**

The district court decision challenged here has put Plaintiff-Appellant Dr. John Doe in an impossible position. In order to pursue litigation to vindicate his constitutional rights, he must publicly reveal information that could ruin his reputation and destroy his career, information which he has spent immense time and resources keeping confidential: the existence of his pardoned, sealed convictions from more than 30 years ago. Although there is a presumption that litigants must appear using their proper names, that presumption is not absolute, and the district court here erred in denying Dr. Doe's well-founded motion to proceed using a pseudonym.

In 1991 and 1992, Dr. Doe was convicted of non-violent felonies committed while he was a teenager. He subsequently turned his life around, becoming a model citizen and building an impressive career. In 2009, Dr. Doe received a full pardon from the state of Ohio based on his complete rehabilitation, and in 2010 his record was sealed. In 2022, Dr. Doe applied and received an offer for a position with the Federal Deposit Insurance Corporation ("FDIC"). Upon learning of his past convictions, however, FDIC rescinded the offer based on an absolute statutory bar on the employment of individuals with prior felony convictions. *See* 12 U.S.C. § 1822(f)(4)(E)(i). Dr. Doe seeks to challenge that unconstitutional categorical bar on hiring anyone ever convicted of any felony under any circumstances. He also

1

seeks damages under the Fair Credit Reporting Act ("FCRA") for FDIC's failure to provide him with a copy of the consumer background report on which it relied in rescinding the offer of employment.

Concurrent with his complaint, Dr. Doe filed a motion to proceed under a pseudonym. Dr. Doe explained the sensitive and private nature of his pardoned and sealed convictions, noting that they no longer exist in the public record. Because he would be exposed to significant stigma and harassment if the convictions were publicly disclosed, and because the public's understanding of the litigation would not be aided by revealing his identity, Dr. Doe sought to preserve his anonymity by pursuing the litigation under a pseudonym.

The district court denied this motion, reasoning that Dr. Doe failed to show that his privacy interest outweighed the public's interest in learning his identity. In making its determination, however, the district court erred by failing to account for the uniquely heightened privacy interest an individual has in a criminal record that has been pardoned and sealed and thereby removed from the public record—an interest akin to those long recognized by this Court. As Dr. Doe has explained, revealing his identity in this case would create the misleading public impression that he remains a felon despite the fact that Ohio law treats his criminal case as if it never occurred. *See* Ohio Rev. Code Ann. § 2953.32(D)(2)(b) (2024). That public association with criminal activity would cause Dr. Doe serious harm,

opening him up to harassment and discrimination that would derail his life and career.

The district court also erred in reading *In re Sealed Case* ("*In re Sealed Case II*"), 971 F.3d 324 (D.C. Cir. 2020), to create a heightened public interest in *all* suits against the government that weighs against pseudonymity whenever the defendant is a government entity.  Given that courts have traditionally been less inclined to allow a plaintiff to proceed under a pseudonym when the defendant is a private party, the district court's reading would essentially create a presumption against pseudonymity no matter the identity of the defendant.  That is both illogical, rendering meaningless the fourth factor of this Court's test for deciding pseudonym motions, and at odds with the intended meaning of that factor.  This Court should reverse the decision below and allow Dr. Doe to pursue his legal claims without having to publicly link his identity to his long-pardoned and -sealed conviction history.

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction over the underlying case pursuant to 28 U.S.C. §§ 1331, 1337(a), 15 U.S.C. § 1681p, and 12 U.S.C. §§ 1819(a) & (b)(2)(A).  The Chief Judge acted pursuant to D.C. District Court Local Rule 40.7(f) in considering *ex parte* the motion to proceed under a pseudonym.

3

The district court denied the motion to proceed under a pseudonym on February 23, 2024. Plaintiff timely noticed an appeal on March 8, 2024. This Court has appellate jurisdiction under the collateral-order doctrine. *See* 28 U.S.C. § 1291; *In re Sealed Case* ("*In re Sealed Case I*"), 931 F.3d 92, 95-96 (D.C. Cir. 2019) (holding that an order denying a motion to proceed anonymously satisfies the requirements of the collateral-order doctrine).

## STATEMENT OF THE ISSUE

This appeal arises from the district court's denial of Dr. Doe's motion to proceed under a pseudonym in this case. The issue presented is whether the district court abused its discretion in denying Dr. Doe's motion to proceed under a pseudonym by failing to afford adequate weight to the fact that he had been pardoned and his convictions sealed and by improperly holding that the presence of government defendants weighed against allowing Dr. Doe to proceed anonymously.

## STATEMENT OF THE CASE

### A.     Legal Background

Although a party must generally proceed under its own name in litigation, district courts have discretion to grant a "rare dispensation" and allow a party to proceed under a pseudonym when the circumstances warrant it. *United States v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995) (citing *James v. Jacobson*, 6

F.3d 233, 238 (4th Cir. 1993)).  In deciding whether to exercise that discretion, courts must "balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure." *In re Sealed Case* ("*In re Sealed Case I*"), 931 F.3d 92, 96 (D.C. Cir. 2019).  The ultimate question for the court is "whether the plaintiff has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (internal quotation marks omitted) (citing *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. Unit A Aug. 1981)).

This Circuit has adopted a five-factor test to guide a court's inquiry.  Under that test, a district court should consider "(1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a governmental or private party; and relatedly, (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously." *In re Sealed Case I*, 931 F.3d at 97 (citing *James*, 6 F.3d at 238).  While the test is not "a wooden exercise of ticking the five boxes," the

factors are meant to inform a court's holistic "balancing of the public and private interests at stake" in a case.  *Id*.

## B. Factual Background

More than 30 years ago, Dr. Doe was convicted of non-violent felonies committed while he was still a teenager.  App. 8.  Since that time, he has not had a single arrest or conviction.  *Id*.  Instead, he rehabilitated himself and has led an exemplary life.  *Id*. at 8-10.  Dr. Doe put himself through college, graduate school, and a doctorate program.  *Id*. at 9.  He has served as an educator, a mentor, and a devout member of his church.  *Id*. at 5.  He has also spent over a decade in federal government service, including positions of trust that require a security clearance.  *Id*. at 9-10.  Throughout his professional career, Dr. Doe has been a model employee, receiving glowing reviews for both his work and his integrity.  *Id*.

In 2009, the Governor of Ohio granted Dr. Doe a full pardon based on his record of complete rehabilitation and service to his community.  *Id*. at 10-11.  Under Ohio law, that pardon relieved Dr. Doe "of all disabilities arising out of" his convictions.  Ohio Rev. Code Ann. § 2967.04(B) (2023).   In 2010, the Ohio Court of Common Pleas permanently sealed his record,[2]  App. 11, closing off the record

---

[2] In 2010, when Dr. Doe filed an Application for Expungement, Ohio used the terms "expungement" and "sealing" interchangeably to refer to the process of blocking access to an individual's official criminal record and deleting index references to the conviction.  *See State v. Pariag*, 998 N.E.2d 401, 403-04 (Ohio

*Continued on next page.*

from public view and deeming the convictions "not to have occurred," Ohio Rev.

Code Ann. § 2953.32(D)(2)(b).  Shortly thereafter, ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

     In the time since he was pardoned and had his record sealed, Dr. Doe has

taken extraordinary steps to ensure that his prior convictions remain confidential

and inaccessible to the public.  ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████  As a result

of these efforts, Dr. Doe's convictions have faded almost entirely from the public

record.  ████████████████████████████████████████████

████████████████████████████████████████████████████████

██

---

2013).  In 2023, however, the state enacted a new law creating separate processes
for sealing and expungement.  S.B. 288, 134th Gen. Assemb. (Ohio 2023).  This
brief uses the term "sealing" to avoid any confusion with the expungement process
implemented by the new law.

Dr. Doe knows firsthand the biases that people harbor against individuals with prior convictions and the stigma of being viewed as a felon. ▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

## C.    Prior Proceedings

Based on Dr. Doe's impressive credentials and experience, FDIC offered him a position as a records systems specialist in 2022. *Id.* at 11. Upon learning of his pardoned and sealed convictions, however, FDIC rescinded its offer based on a categorical statutory bar on the employment of individuals with prior felony convictions. *Id.* at 12; *see* 12 U.S.C. § 1822(f)(4)(E)(i). Dr. Doe filed this lawsuit seeking a declaration that the absolute, permanent ban on employing anyone who has been convicted of a felony is unconstitutional, as well as a permanent

injunction against the application of that provision. Dr. Doe also seeks damages for FDIC's failure to comply with FCRA's requirement that the agency provide him with a copy of the consumer credit report it relied on in taking adverse action against him. *See* 15 U.S.C. § 1681b(b)(3).

Concurrently with his complaint, Dr. Doe filed a motion to proceed under a pseudonym. He explained that pursuing this case under his own name would require him to disclose his long-pardoned and -sealed convictions, which no longer appear in the public record. Dr. Doe detailed how publicly revealing those prior convictions would threaten his reputation, harm his physical and mental health, and jeopardize the successful career he has built, implicating serious privacy interests.

Two days later, the district court, acting through its Chief Judge, denied the motion.[3] The court considered each of the five factors laid out by *In re Sealed Case I* in turn. Although it held that two of the factors weighed in favor of anonymity, it concluded that the remaining three factors "tip[ped] the scales toward disclosure." App. 36.

Considering the first factor, the court found that disclosing Dr. Doe's identity would "not reveal any information of a sensitive or highly personal nature" because his conviction history was unlike the kind of information traditionally

---

[3] The Chief Judge is responsible for hearing and deciding motions to file a pseudonymous complaint in the first instance. *See* D.D.C. LCvR 40.7(f).

protected.  *Id*. at 34 (cleaned up).  The court also found that Dr. Doe had not explained how revealing his conviction history would cause sufficient harm to "him[self], his reputation, or his professional prospects" to establish a privacy interest in the information.  *Id*. at 35.  The court therefore weighed the first factor against anonymity.

The court held that the second factor, on the other hand, supported proceeding under a pseudonym.  It credited the psychological harms Dr. Doe detailed in his declaration, including intense anxiety and depression, and found that "publicity could exacerbate" these harms.  *Id*. (internal quotation marks and citation omitted).  Although the court found that the harms Dr. Doe would experience were not "retaliatory harm as such," it nonetheless determined that they were sufficient to weigh in favor of anonymity.  *Id*. (internal quotation marks and citation omitted).

Turning to the third factor, the court found that because Dr. Doe is not a minor and the case "does not implicate the privacy interests of any minors," this factor supported the disclosure of Dr. Doe's identity.  *Id*.

On the fourth factor, the court acknowledged that proceeding under a pseudonym is generally "more acceptable when the defendant is a governmental body because government defendants do not share the concerns about reputation that private individuals have when they are publicly charged with wrongdoing."

*Id*. at 35-36 (cleaned up).  The court nevertheless read this Court's decision in *In re Sealed Case* ("*In re Sealed Case II*"), 971 F.3d 324 (D.C. Cir. 2020), to establish a "heightened public interest when an individual or entity files a suit against the government, particularly in a manner that may alter the operation of public law both as applied to it and, by virtue of the legal arguments presented, to other parties going forward."  App. 36 (internal quotation marks omitted) (quoting *In re Sealed Case II*, 971 F.3d at 329).  Because this case challenges a "statute that prohibits a federal agency from hiring any person who has been convicted of any felony," the court held that it "directly concerns the operation of public law" and therefore triggers that "heightened public interest."  *Id*. (internal quotation marks and citation omitted).  The court treated the heightened interest as decisive in its consideration of factor four, noting that the existence of such an interest "often controls the final disposition of this factor," and therefore weighed this factor against allowing Dr. Doe to proceed under a pseudonym.  *Id*.

Finally, the district court found that the fifth factor supported anonymity because there would be no unfairness to the defendants in granting the motion.  *Id*. The court noted that the defendants "are already aware" of Dr. Doe's real identity through "his FDIC job-application materials" and would therefore face no hardship in litigating against him if he proceeded under a pseudonym.  *Id*.

Determining that the weight of the factors tipped the scales toward disclosure, the court denied Dr. Doe's motion for leave to file under a pseudonym and gave him 14 days to decide whether to move forward with the suit under his own name. Dr. Doe moved to stay that requirement while he appealed the decision, a motion the district court granted, and noticed this appeal.

## SUMMARY OF ARGUMENT

In denying Dr. Doe's motion to proceed under a pseudonym, the district court made two key errors. First, the court failed to give due weight to Dr. Doe's significant privacy interests in his pardoned and sealed convictions. The court dismissed Dr. Doe's interest in his convictions as falling outside the list of issues traditionally deemed weighty enough to warrant pseudonymity, concluding that he would experience mere annoyance or harmless criticism as a result of proceeding under his own name. In doing so, however, the court failed to consider the uniquely sensitive nature of a conviction that has been pardoned and sealed and therefore wiped from the public record, an interest that this Court and others have long recognized. The court also failed to engage with the stigmatic harms Dr. Doe would suffer should his past convictions come to light, ignoring extensive evidence in the record about the risks to Dr. Doe's reputation, mental and physical health, and professional prospects. As a result, the court improperly weighed this factor against allowing Dr. Doe to proceed under a pseudonym.

Second, the court misread *In re Sealed Case II*, 971 F.3d 324 (D.C. Cir. 2020), to establish a blanket rule that there is always heightened public interest in suits against the government.  Applying this rule, the district court found that the presence of government defendants in this case weighed against allowing Dr. Doe to proceed under a pseudonym.  But that approach reads *In re Sealed Case II* too broadly to create a no-win situation for plaintiffs seeking to proceed under a pseudonym, in which the fourth factor—whether the action is against a governmental or private party—weighs against plaintiffs no matter who they sue. Instead, the court should have considered whether publicizing Dr. Doe's identity would aid in the public understanding of the proceedings in this particular case. Because it would not do so, the district court erred in weighing this factor against pseudonymity.

Although the district court acknowledged that some of the factors weighed in favor of anonymity, it relied on erroneous reasoning about factors one and four to conclude that the balance tipped against granting Dr. Doe's motion.  These errors altered the court's consideration of the balance of interests in this case and constitute an abuse of discretion.  This Court should reverse the district court's denial of the motion to proceed under a pseudonym and allow Dr. Doe to pursue this litigation without publicly identifying himself.

## STANDARD OF REVIEW

This Court reviews de novo the criteria used by a district court to decide whether to grant a motion to proceed anonymously and the court's application of those criteria for an abuse of discretion. *In re Sealed Case I*, 931 F.3d at 96. A district court abuses its discretion when it "fail[s] to consider a relevant factor or relie[s] on an improper factor," and when "the reasons given" do not "reasonably support the conclusion." *Id*. (internal quotation marks and alterations omitted) (citing *Kickapoo Tribe of Indians of the Kickapoo Reservation in Kan. v. Babbitt*, 43 F.3d 1491, 1497 (D.C. Cir. 1995)); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.").

## ARGUMENT

## I.     Dr. Doe's Pardoned, Sealed Convictions are Sensitive and Highly Personal Information

Under the *In re Sealed Case I* test, the first factor that a court considers in weighing a motion to proceed under a pseudonym is "whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of a sensitive and highly personal nature." 931 F.3d at 97. The district court in this case concluded that this factor weighed against pseudonymity because it determined that Dr. Doe's

prior criminal history does not qualify as "information of a sensitive or personal nature." App. 34 (cleaned up).

The court erred in failing to recognize the significant privacy interest Dr. Doe has in his pardoned and sealed convictions. As this Court has consistently recognized, individuals have a compelling interest in keeping their criminal history private, especially when they do not have a public record of having been convicted of a crime. Revealing such information is uniquely harmful and stigmatizing, since it creates the misleading public impression that an individual is a criminal even though they have no criminal record in the eyes of the law. And this privacy interest is even greater when criminal history information has been removed from the public record and faded from memory, since disclosure would make available information that was previously confidential. The district court's failure to account for—or even acknowledge—this weighty interest was an error that infected its consideration of the first factor and mandates reversal.

A.    **The district court erred in failing to consider the pardon and sealing of Dr. Doe's convictions when weighing the first factor.**

In determining that disclosure of Dr. Doe's identity would not reveal any information of a sensitive or highly personal nature, the district court treated him like any litigant with a publicly accessible criminal record trying to avoid drawing attention to his past. But Dr. Doe's situation is wholly different: information about

his criminal history is not publicly accessible, and, in fact, he no longer has a criminal history in the eyes of the law. Almost 20 years ago, Dr. Doe received a full pardon from the Governor of Ohio, and shortly thereafter he took steps to protect his now-unblemished record by having his criminal history sealed from public view. Under Ohio law, those efforts mean that his offenses have been forgiven by the state, all penalties and disabilities arising from those offenses have been relieved, and "[t]he proceedings in the case[s] that pertain to [his] conviction[s] . . . shall be considered not to have occurred." Ohio Rev. Code Ann. §§ 2967.04(B), 2953.32(D)(2)(b). Dr. Doe has made significant efforts to preserve the relief he was granted by the state and ensure that he is not publicly linked to his previous convictions. Disclosure of Dr. Doe's identity in this case would newly associate him with a criminal record that no longer publicly exists and would undo the relief he was granted by Ohio law.

This interest in shielding oneself from a misleading association with criminal activity provides a uniquely powerful reason for anonymity. As this Court has acknowledged, individuals who "have been acquitted or had the relevant charges dismissed . . . have a significant and justified interest in avoiding additional and unnecessary publicity" because although they are not guilty in the eyes of the law, "public perceptions can be quite different." *Am. C.L. Union v. U.S. Dep't of Just.* ("*ACLU II*"), 750 F.3d 927, 933-34 (D.C. Cir. 2014). Although

Dr. Doe is not in the same position as a defendant who was never convicted, his circumstances raise similar concerns about "being associated unwarrantedly with alleged criminal activity." *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 92 (D.C. Cir. 1984). "In the eyes of the law," Dr. Doe has the same privacy concerns as someone who was acquitted: because his previous convictions are now considered not to have occurred, he has an interest in avoiding the reputational harm that comes with being labeled a criminal. *ACLU II*, 750 F.3d at 933; *see* Ohio Rev. Code Ann. § 2953.32(D)(2)(b). He too is "entitled to move on with [his] li[fe] without having the public reminded" of his long-pardoned and -sealed transgressions. *ACLU II*, 750 F.3d at 933. Indeed, that is the purpose behind Ohio's sealing process. The state allows for the sealing of records to give qualified, rehabilitated individuals the means to avoid the devastating "economic, social, and legal consequences" of being publicly linked to a criminal record. *City of Pepper Pike v. Doe*, 421 N.E.2d 1303, 1307 (Ohio 1981). Denying Dr. Doe the opportunity to proceed under a pseudonym undermines Ohio's efforts to provide him with a clean slate.

Dr. Doe's privacy interest is heightened further because his criminal history has been "wholly forgotten." *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 769 (1989); *see also id.* at 763 (explaining that the strength of an individual's privacy interest "rest[s] in part on the degree of

dissemination of the allegedly private fact and the extent to which the passage of time rendered it private"). Dr. Doe's convictions are over three decades old, and they have been sealed for 14 years. ███████████████████

████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

█████████████████████████ This is not a case in which Dr. Doe's conviction record is still readily accessible to the public and proceeding under his own name would reveal nothing new about his history. *See Am. C.L. Union v. U.S. Dep't of Just.* ("*ACLU I*"), 655 F.3d 1, 9 (D.C. Cir. 2011). Quite the opposite: Ohio has removed Dr. Doe's convictions from the public record and purged their legal impact, offering him a fresh start. He has diligently worked for over a decade to ensure that his conviction history remains confidential. Were he to use his full name in this lawsuit, it would put information he has made extensive efforts to keep private back into the public domain, available to any person who performs "a simple computer search that permits access to the electronic docket sheet of nearly any case." *J.W. v. District of Columbia*, 318 F.R.D. 196, 200 (D.D.C. 2016). And once this is done, it cannot be undone—unlike decades ago, when Dr. Doe was able to scrub his convictions from public records, "the realities of today's technological landscape" mean that today, his name would be forever associated

18

with his criminal record.  *Id*. at 199.  Dr. Doe does not seek to avoid mere embarrassment or the risk of criticism.  Instead, he seeks the opportunity to vindicate his rights without undoing the effects of the pardon and sealing he worked so hard to receive.

Courts in other circuits considering similar motions to proceed under a pseudonym have consistently recognized a heightened privacy interest in criminal history information that has been sealed or expunged, especially when it has also faded from public memory.  *See, e.g.*, *Doe v. Lee*, No. 3:22-cv-00569, 2023 WL 2587790, at *3 (M.D. Tenn. Mar. 21, 2023) ("Revealing the fact of a prior conviction may weigh in favor of anonymity when, for example, the conviction has been expunged."); *E.B. v. Landry*, No. 19-862, 2020 WL 5775148, at *2 (M.D. La. Sept. 28, 2020) (recognizing "a real privacy interest" that weighed in favor of anonymity for plaintiffs suing to have their convictions expunged); *Doe v. Ronan*, No. 1:09cv243, 2009 WL 10679478, at *1-2 (S.D. Ohio June 4, 2009) (concluding that a decades-old, expunged conviction qualifies as "information of the utmost intimacy" because a criminal record "carries a very negative connotation in society which can be embarrassing and humiliating if that information becomes public" and because Ohio law treats an expunged conviction as "not having occurred"); *Doe I-VII v. Sturdivant*, No. 06-10214, 2006 WL 8432896, at *2 (E.D. Mich. Apr. 7, 2006) (holding that "the fact that one has been convicted when that conviction

has been set aside and the record sealed from public disclosure is 'of the utmost intimacy'").  *Cf. Doe v. U.S. Healthworks Inc.*, No. CV 15-05689, 2016 WL 11745513, at *5 (C.D. Cal. Feb. 4, 2016) (finding a lesser privacy interest when plaintiff's convictions were dismissed under a statutory provision that restored only "some private rights" and the records were still "readily accessible"); *Doe v. Rentgrow, Inc.*, No. 23-cv-00860, 2023 WL 6541998 (D. Nev. Aug. 3, 2023) (imposing a protective order to prevent a public link between the plaintiff and any mention of his expunged criminal history information).  The district court, however, did not acknowledge this wealth of precedent or take into account the uniquely sensitive nature of pardoned and sealed convictions.  *Compare* App. 32-37 *with* App. 41-45.  Its failure to do so was an abuse of discretion that distorted its consideration of the interests at stake in Dr. Doe's motion.

> **B.  Dr. Doe detailed the extensive harms he would experience if his criminal history were disclosed.**

The district court also asserted that Dr. Doe did "not explain[] how linking his name with his previous convictions . . . could cause any harm beyond the annoyance and criticism that may attend any litigation."  App. 34 (internal quotation marks and citation omitted).  In reaching this conclusion on the first factor, however, the court failed to engage with the harms Dr. Doe discussed extensively in his declaration.  █████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████ Indeed, as the

facts set forth in the underlying complaint demonstrate, Dr. Doe would

indisputably face discrimination that would limit his professional opportunities if

his pardoned and sealed convictions were disclosed.

As this Court has acknowledged, publication of a criminal record—

particularly one not already accessible to the public—can cause ongoing harm to

an individual's personal and professional prospects. *See, e.g.*, *ACLU I*, 655 F.3d at

7 (explaining that "disclosure of a criminal conviction . . . may endanger one's

prospects for successful reintegration into the community" (internal quotation

marks and citation omitted)); *Doe v. Webster*, 606 F.2d 1226, 1234 (D.C. Cir.

1979) (describing the "loss of economic opportunity" for those with convictions).

Pardons and sealing are designed to offer individuals "a second chance, in terms of

both jobs and standing in the community." *Webster*, 606 F.2d at 1235; *see also*

*Barker v. State*, 402 N.E.2d 550, 555 (Ohio 1980) (explaining that Ohio's sealing

statute is intended "to provide remedial relief to qualified offenders in order to

facilitate the prompt transition of these individuals into meaningful and productive

roles").  Dr. Doe diligently pursued that second chance and made the most of it,

building an admirable reputation and career while unburdened by the stigma of a

criminal record.  Disclosing his identity as part of this case would forever link his name to prior convictions, undoing his clean slate and exposing him anew to the harassment and discrimination he has spent much of his life trying to escape.

 

Indeed, the district court's determination that Dr. Doe would suffer mere annoyance from having his identity revealed is in tension with its own subsequent

determination that such identification would cause a serious risk of harm to his mental health. When considering the first factor, the court concluded that "Doe has not explained how revealing his identity or allowing the public to associate him with his previous convictions would harm him, his reputation, or his professional prospects." *Id*. at 35. In the very next paragraph, however, the court found that factor two "slightly favors proceeding under a pseudonym" because the psychological harms Dr. Doe detailed in his declaration "could be exacerbated should his identity be revealed." *Id*. This inconsistency in acknowledging Dr. Doe's explanation of the harms that proceeding under his own name would cause is inexplicable, and it undermines the court's conclusion that Dr. Doe's identity did not warrant protection.

Although the district court acknowledged that "[h]arms stemming from being falsely associated with misconduct can certainly weigh in favor of pseudonymity," it concluded that, because "linking his name with his previous convictions . . . would not be <u>falsely</u> accusing [Dr. Doe] of anything," any injury he suffered would be mere annoyance. *Id*. at 34. But while Dr. Doe's discussion of his criminal history contains no false information, linking him to a criminal record would be *misleading* in a way that would cause him identical harms. As discussed, Ohio law treats Dr. Doe's pardon as offering a fresh start, relieving him "of all disabilities arising out of the . . . convictions for which it is granted." Ohio

Rev. Code Ann. § 2967.04(B).  And having his record sealed means that, in the eyes of the law, it is as if his convictions never occurred.  *Id*. § 2953.32(D)(2)(b).

Given his pardon and sealing, the risk of being "unfairly brand[ed]" by association with a stigmatizing label is as applicable to Dr. Doe as it was to the plaintiff in *Doe v. Benoit*, No. 1:19-cv-01253, 2019 WL 13079193 (D.D.C. Apr. 30, 2019), to whom the district court unfavorably compared him.  App. 34 (citation omitted).  Just as being investigated as a potential "insider threat" could lead others to consider the Doe plaintiff "a likely terrorist or traitor" or "troublemaker" even if the allegation was not true, *id*. (internal quotation marks and citation omitted), being linked to criminal convictions would cause Dr. Doe to be labeled a felon even though his record has been legally forgiven, *see Stern*, 737 F.2d at 92 (noting the stigma that surrounds criminal activity and explaining that even being linked to a criminal investigation "may make those persons the subjects of rumor and innuendo, possibly resulting in serious damage to their reputations"). ███████ ████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████ ███████████████████████████████████████ Requiring Dr. Doe to reveal his identity to pursue this litigation would defeat the clean slate afforded him by Ohio's pardon and sealing process—as "[c]ommon experience

teaches," speculation over an individual's association with criminal activity "is not quieted" by legal relief like a pardon. *Fund for Const. Gov't v. Nat'l Archives & Recs. Serv.*, 656 F.2d 856, 864 (D.C. Cir. 1981). Instead, ██████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

Indeed, Dr. Doe's pardoned and sealed criminal history is similar to the matters traditionally protected by anonymity. This Court has identified certain matters that "commonly" satisfy the first factor, including "sexual activities, reproductive rights, bodily autonomy, medical concerns, or the identity of abused minors." *In re Sealed Case II*, 971 F.3d at 327. The district court suggested that because Dr. Doe's complaint did not include any information that fell within one of these identified categories, it did not reveal any "intimate or sensitive personal information." App. 34. But this Court's list was not intended to be exhaustive. Indeed, district courts in this circuit have articulated a variety of examples of matters that are "traditionally protected" under factor one. *See, e.g.*, *Nat'l Ass'n of Waterfront Emps. v. Chao*, 587 F. Supp. 2d 90, 99 n.8 (D.D.C. 2008) (listing "birth control, abortion, homosexuality [and] the welfare rights of illegitimate children or abandoned families") (citing *S. Methodist Univ. Ass'n of Women L. Students v. Wynne & Jaffe*, 599 F.2d 707, 712–13 (5th Cir. 1979)). What these matters have in

common is that they include private, personal information that, at the time the cases were decided, would have caused a "social stigma" if publicly revealed. *Frank*, 951 F.2d at 324; *see also Horowitz v. Peace Corps*, 428 F.3d 271, 279 (D.C. Cir. 2005) (noting that "[t]he private interest in nondisclosure may predominate" when disclosure would cause "moral and social opprobrium"). Whether revealing a party's identity would subject him to such a stigma is the consideration underlying the first factor, and it is the type of harm against which pseudonymity was designed to protect.

Revelation of his pardoned and sealed convictions would associate Dr. Doe with exactly that sort of stigma. Like the information traditionally protected under factor one, Dr. Doe's criminal record is information that is not publicly available and that would not otherwise be publicly known. Requiring him to disclose his identity would publicly and permanently link him to that information, exposing him to social stigma. Indeed, ███████████████████████████████████ ████████████████████████████████████████████████████████ *see Stegall*, 653 F.2d at 186 (holding that a family's religious beliefs and practices were sensitive personal information because they "invited an opprobrium analogous to the infamy associated with criminal behavior"). ████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

As this Court has recognized, there is a "common and pervasive social stigma . . . that in this society accompan[ies] the 'ex-con' label," whether or not that label is warranted. *Webster*, 606 F.2d at 1234; *see also ACLU II*, 750 F.3d at 933 (noting that even if one is innocent "[i]n the eyes of the law . . . public perceptions can be quite different"). Social science research supports this conclusion. Indeed, those with a criminal history "face more social exclusion from the public" and are more "deeply stigmatized in a workplace setting" than those from other stigmatized groups. Crosby Hipes, *The Impact of a Felony Conviction on Stigmatization in a Workplace Scenario*, 56 Int'l J. of L., Crime, and Just. 89, 95 (2019). Dr. Doe therefore faces an impossible choice: in order to challenge FDIC's unconstitutional denial of employment, he will be subjecting himself to discrimination in all future employment. Nor will the fact of his pardon alone "remove the social stigma" once his identity is linked to the convictions. John R. Stanish, *The Effect of a Presidential Pardon*, 42 Fed. Prob. 3, 4 (1978). Only by keeping the information private can Dr. Doe hope to avoid discrimination and loss of job opportunities. *See* Isabel Brawer Stark, *Expungement and Sealing of Arrest and Conviction Records: The New Jersey Response*, 5 Seton Hall L. Rev. 864, 864

(1974) ("Persons whose arrests have resulted in dispositions other than conviction . . . may also become the subject of societal disapproval and discrimination when records of such arrest become known outside the criminal justice system.").  This is exactly the type of stigmatizing information that fits within the traditional list protected by this factor: information that, if revealed, would cause not just "personal embarrassment" but targeted hostility and discrimination.  *Frank*, 951 F.2d at 324.  The district court erred in dismissing Dr. Doe's privacy concerns without considering the serious harms he would face should his identity be linked to his previous convictions.

## II.     The Presence of Governmental Defendants Does Not Weigh Against Pseudonymity In This Case

The district court also abused its discretion—and committed legal error—by holding that *In re Sealed Case II* established a categorical "heightened public interest" that applies whenever "an individual or entity files a suit against the government."  App. 36 (internal quotation marks omitted).  The district court gave decisive weight to this "heightened interest" in government affairs, noting that it "often controls the final disposition" of the fourth factor.  *Id*.  But *In re Sealed Case II* did not establish such a sweeping presumption.  Instead, it held that where the identity of the party is critical to understanding the nature of the claim against the government and how the resolution of that claim might apply to similarly situated plaintiffs, pseudonymity is disfavored.  That is not the situation presented

by this case, and the district court erred in relying exclusively on its misreading of precedent to weigh the fourth factor against anonymity.

*In re Sealed Case II* involved a challenge to the Environmental Protection Agency's adjudication of a regulated entity's request for an exemption from its renewable fuels obligations. 971 F.3d at 325. Because the challenge involved individualized "applications for special exemptions from the law's obligations," the details of the applicant's identity were relevant to both the agency adjudication at issue and to the public's understanding of how the Court's decision might be applied to future applicants. *Id*. at 329. The Court acknowledged the potential public relevance of the parties' identities in considering the plaintiff's request to proceed under a pseudonym. It ultimately denied the request, holding that that there may be a heightened public interest in the identity of litigants that weighs against pseudonymity when the plaintiff is a regulated entity seeking an exemption from otherwise-applicable legal obligations and the litigation raises questions about whether the agency at issue "reasonably and evenhandedly applied the statutory and regulatory scheme"—that is, when a case turns on fact-intensive questions that necessarily involve the identities of the parties. *Id*.

The Court did not, as the district court suggested, create a universal rule that any litigation against the government creates a heightened public interest that decisively weighs against anonymity. App. 36. Instead, it took a far more

measured approach, explaining that litigation that seeks to alter "the operation of a statutory program" for both the plaintiff and "other parties going forward" could create exceptional public interests in open proceedings that might outweigh a plaintiff's interest in pseudonymity—especially when the plaintiff's interest rests on "conclusory assertions of factually unsubstantiated economic harms." *In re Sealed Case II*, 971 F.3d at 329. That is not the case here. Dr. Doe has established a significant privacy interest. *See supra* Part I. And his suit does not involve the operation of the FDIC's substantive statutory programs, its relationship with regulated entities, or any individualized determination of rights. Instead, he challenges the constitutionality of a categorial statutory bar on the employment of those with felony convictions at FDIC and seeks relief under FCRA for the agency's failure to provide him with a copy of his background report before rescinding his job offer. While a decision striking down the statute could affect other parties, it would affect every individual in the exact same way. Revealing Dr. Doe's identity is neither necessary nor helpful to allow similarly situated individuals to understand how their rights might change if he prevails.

Nor does the public's ability to understand the claims here depend on knowing Dr. Doe's name. The issues presented in this suit are "purely legal," giving the public "an atypically weak" interest in knowing the plaintiff's name. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008) (citation

omitted). The facts of his case, including Dr. Doe's background and the reason for FDIC's denial of his application, are not in dispute. "The decision in this case does not turn on judgements about the credibility of particular witnesses" or specific facts about Dr. Doe's experiences, "but instead on an assessment of the parties' legal arguments." *Lozano v. City of Hazleton*, 496 F. Supp. 2d 477, 512 (M.D. Pa. 2007), *aff'd in relevant part*, 620 F.3d 170 (3d Cir. 2010), *vacated in part on other grounds*, 563 U.S. 1030 (2011). As a result, "the filings in this case and the Court's ultimate public explanation of its merits determination" will be sufficient to "adequately allow the public to understand the Court's determination and hold the [government] accountable." *J.W.*, 318 F.R.D. at 202. Allowing Dr. Doe to proceed under a pseudonym will therefore "have only a limited impact on the public interest in open proceedings." *Id.* (cleaned up). And indeed, granting this motion would *serve* the public interest in ensuring that the constitutionality of federal laws is adjudicated. *See Lozano*, 496 F. Supp. 2d at 512.

The district court's overbroad reading of *In re Sealed Case II* would turn the fourth factor into a meaningless formality because there is no situation in which it could weigh in favor of pseudonymity. As the district court acknowledged, "generally, anonymous litigation is more acceptable when the defendant is a governmental body because government defendants do not share the concerns about reputation that private individuals have when they are publicly charged with

wrongdoing." App. 35-36 (cleaned up); *see also Microsoft Corp.*, 56 F.3d at 1457 (disfavoring anonymity in a case brought against a private defendant, noting "[a]nonymity may well confer a kind of immunity which permits a plaintiff to hurl rhetorical weapons that could cause a unique kind of harm not faced in ordinary litigation"). The Fifth Circuit first articulated factor four with this presumption in mind: it observed that "all of the plaintiffs previously allowed in other cases to proceed anonymously were challenging the constitutional, statutory, or regulatory validity of government activity" and reasoned that while "the mere filing of a civil action" could damage the reputation of private parties, it was not likely to harm the government. *Wynne & Jaffe*, 599 F.2d at 713. Accordingly, it held that the presence of private defendants in a case weighs against anonymity, but the presence of government defendants does not.[4] *Id.* Other circuits adopted the same test, *see, e.g.*, *Frank*, 951 F.2d at 323, and that is how courts in this circuit have long understood and applied the fourth factor, *see, e.g.*, *J.W.*, 318 F.R.D. at 201 (quoting *Doe v. Cabrera*, 307 F.R.D. 1, 8 (D.D.C. 2014)); *Yaman v. U.S. Dep't of State*, 786 F. Supp. 2d 148, 153 (D.D.C. 2011).

---

[4] Courts in this circuit have applied this reasoning equally to private individuals and private entities. *Compare Chao*, 587 F. Supp. at 99 n.9 (noting that factor four weighs against anonymity "if an individual has been accused publicly of wrongdoing" (internal quotation marks and citation omitted)) *with Doe 1 v. Geo. Wash. Univ.*, 369 F. Supp. 3d 49, 67 (D.D.C. 2019) (holding that factor four weighed against anonymity because the litigation could cause "reputational damage" to a university).

The district court's rule turns this presumption on its head, putting plaintiffs in a no-win situation. Under the district court's approach, factor four can only ever weigh against plaintiffs who seek to proceed under a pseudonym: if they sue private parties, those parties' reputational interests counsel against anonymity, but if they sue governmental parties, the public's interest leads to the same result. Such a rule would be both at odds with the intended meaning of the factor and a nonsensical addition to the *In re Sealed Case I* test. This Court should reverse the district court's erroneous weighing of factor four and clarify the limited and fact-bound holding *of In re Sealed Case II* to prevent further confusion about how to understand the factor.

## CONCLUSION

For the foregoing reasons, the district court's order denying the motion to proceed under a pseudonym should be reversed.

Respectfully submitted,

|  |  |
|---|---|
| Joanna K. Wasik | */s/ Alexandra Lichtenstein* |
| WASHINGTON LAWYERS' | Alexandra Lichtenstein |
| COMMITTEE FOR CIVIL RIGHTS | Kelsi Brown Corkran |
| AND URBAN AFFAIRS | Joseph W. Mead |
| 700 14th St. #400 | INSTITUTE FOR |
| Washington, D.C. 20005 | CONSTITUTIONAL ADVOCACY |
| Tel. (202) 319-1000 | AND PROTECTION |
| Fax (202) 319-1010 | Georgetown University Law Center |
|  | 600 New Jersey Ave., N.W. |
|  | Washington, D.C. 20001 |
|  | (202) 662-9042 |
|  | alex.lichtenstein@georgetown.edu |
|  |  |
|  | *Attorneys for Plaintiff-Appellant* |

June 2024

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7) because it contains 8,027 words, excluding exempted parts. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

*/s/ Alexandra Lichtenstein*
Alexandra Lichtenstein

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Opposing counsel has not yet been identified and has not entered an appearance in the appellate CM/ECF system, so service will be accomplished via certified mail to the below:

Debra Decker
Executive Secretary
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C. 20429

U.S. Department of Justice, Room D103
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Civil Process Clerk
U.S. Attorney's Office for D.C.
601 D Street, NW
Washington, DC 20530

*/s/ Alexandra Lichtenstein*
Alexandra Lichtenstein

**ADDENDUM**

**TABLE OF CONTENTS**

Ohio Rev. Code Ann. § 2953.32(D)(2)(b)...............................................................A1

Ohio Rev. Code Ann. § 2967.04(B) ......................................................................A2

**Ohio Rev. Code Ann. § 2953.32(D)(2)(b)**

**§ 2953.32. Sealing or expungement of record of conviction record or bail forfeiture; exceptions.**

(D)(2)(b) The proceedings in the case that pertain to the conviction or bail forfeiture shall be considered not to have occurred and the conviction or bail forfeiture of the person who is the subject of the proceedings shall be sealed if the application was for sealing or expunged if the application was for expungement, except that upon conviction of a subsequent offense, a sealed record of prior conviction or bail forfeiture may be considered by the court in determining the sentence or other appropriate disposition, including the relief provided for in sections 2953.31, 2953.32, and 2953.34 of the Revised Code.

**Ohio Rev. Code Ann. § 2967.04(B)**

**§ 2967.04. Pardons and commutations.**

(B) An unconditional pardon relieves the person to whom it is granted of all disabilities arising out of the conviction or convictions from which it is granted. For purposes of this section, "unconditional pardon" includes a conditional pardon with respect to which all conditions have been performed or have transpired.