**ORAL ARGUMENT NOT YET SCHEDULED**

**CASE NO. 24-5049**

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA**
————————————

JOHN DOE,
*Plaintiff-Appellant,*

v.

THE FEDERAL DEPOSIT INSURANCE CORPORATION, and JONATHAN
MCKERNAN in his official capacity as Director of FDIC,
*Defendants-Appellees.*
————————————

On Appeal from the United States District Court for the District of Columbia,
Case No. 24-cv-488 (Honorable James E. Boasberg)
————————————

**CORRECTED BRIEF OF AMICI CURIAE IN SUPPORT OF PLAINTIFF-
APPELLANT JOHN DOE**
————————————

OUTTEN & GOLDEN LLP
Sue Huhta
Ossai Miazad
1225 New York Ave, Suite 1200,
Washington, DC 20005
Telephone: (202) 914–5097
Facsimile: (202) 847-4410

OUTTEN & GOLDEN LLP
Moira Heiges-Goepfert*
Once California, 12th Floor,
San Francisco, CA 94111
Telephone: (415) 322-1391
Facsimile: (415) 638-8810

OUTTEN & GOLDEN LLP
Zarka Dsouza**
685 Third Ave, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

*Attorneys for Amici Curiae*

*\*Admitted only in California and
New York; \*\*Admitted only in New
York; practicing law in the District of
Columbia under the supervision of
lawyers in the firm who are members
in good standing of the D.C. Bar.*

# CERTIFICATE OF PARTIES, RULINGS AND RELATED CASES

Counsel for *amici curiae* hereby certify as follows:

**A.      Parties and Amici Curiae**

Except for the following, all parties, intervenors, and *amici* appearing before the district court and in this court are listed in the Brief for Plaintiff-Appellant: *amici curiae* the Ohio Justice & Policy Center; Community Legal Services, Philadelphia; Community Service Society of New York; National Employment Law Project and Youth Represent.

**B.      Ruling Under Review**

References to the ruling at issue appear in Plaintiff-Appellant's brief.

**C.      Related Cases**

To the best of counsel's knowledge, there are no related cases.

Dated: June 4, 2024                                OUTTEN & GOLDEN LLP

                                                             By: */s/ Sue Huhta*
                                                                   Sue Huhta

                                                             *Attorneys for Amici Curiae*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, undersigned counsel for *amici curiae* certifies as follows:

All *amici curiae* state that they are private 501(c)(3) non-profit organizations, that they are not publicly held corporations or other publicly held entities, and that they have no parent corporations. No publicly held corporation or other publicly held entity owns ten percent (10%) or more of any *amicus* organization.

Dated: June 4, 2024                           OUTTEN & GOLDEN LLP

                                              By: */s/ Sue Huhta*
                                                  Sue Huhta

                                              *Attorneys for Amici Curiae*

## STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS

Pursuant to Federal Rule of Appellate Procedure 29, undersigned counsel for *amici curiae* certifies that no party or counsel for any party authored this brief in whole or in part, and no party, counsel for any party, or any other person contributed money that was intended to fund the preparation or submission of this brief.

Dated: June 4, 2024            OUTTEN & GOLDEN LLP

By: */s/ Sue Huhta*
      Sue Huhta

*Attorneys for Amici Curiae*

# TABLE OF CONTENTS

CERTIFICATE OF PARTIES, RULINGS AND RELATED CASES ..................... i

CORPORATE DISCLOSURE STATEMENT ......................................... ii

STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS ....... iii

STATEMENTS OF INTEREST OF AMICI CURIAE ............................. 1

STATEMENT REGARDING STATUTES AND REGULATIONS ...................... 3

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................... 3

I.   ARGUMENT ......................................................................... 5

    A.   The Governor and Courts of Ohio Have Already Determined That Dr. Doe's Criminal History Should Not Be Publicly Available Pursuant to Ohio Laws Intended to Protect the Privacy and Reputational Interests of Rehabilitated Individuals ............................. 5

        1.   Dr. Doe Was Pardoned Pursuant to Ohio Laws Intended to Prevent Future Civil Disabilities, Restrictions or Punishments Based on  Past Convictions ......................................... 5

        2.   The Ohio Court's Sealing of Dr. Doe's Convictions Was Intended to Prevent Public Disclosure of His Criminal History ...................................................................... 8

    B.   The Disclosure of Criminal History Information Is Inherently Stigmatizing and Leads to Serious Collateral Consequences ............. 10

    C.   The District Court Failed to Consider the Significant Privacy Interests That the Ohio State Governor and Courts Have Already Granted Dr. Doe Through Pardon and Sealing ................................... 12

    D.   The Court Failed to Consider or Weigh the Interdependent Nature of Dr. Doe's Lawsuit and His Pseudonym Motion ............................. 15

    E.   The Court Failed to Consider the Substantial Chilling Effect That Public Disclosure Will Have on Litigants Seeking to Vindicate Constitutional and Statutory Rights Relating to Sealed or Expunged Convictions ....................................................................... 18

CONCLUSION ....................................................................................20

CERTIFICATE REGARDING LENGTH OF BRIEF AND TYPEFACE.............21

CERTIFICATE OF SERVICE ...............................................................22

ADDENDUM ....................................................................................23

CASES                                                                   PAGE(S)

*BE&K Constr. Co. v. NLRB,*
   536 U.S. 516 (2002) ...................................................................... 20

*Doe 1 v. George Wash. Univ.,*
   369 F. Supp. 3d 49 (D.D.C. 2019) ................................................. 19

*Doe v. Bates,*
   No. 3:18-cv-1250, 2018 U.S. Dist. LEXIS 161981 (S.D. Ill. Sept. 21, 2018)   16

*Doe v. Harris,*
   640 F.3d 972 (9th Cir. 2011) .......................................................... 17

*Doe v. Mass. Inst. of Tech.,*
   46 F.4th 61 (1st Cir. 2022) ..................................................... 15, 19

*Doe v. Ronan,*
   No. 1:09cv243, 2009 U.S. Dist. LEXIS 147007 (S.D. Ohio June 4, 2009)   15-16

*Doe v. Sessions,*
   No. 18-0004, 2018 U.S. Dist. LEXIS 165829 (D.D.C. Sept. 27, 2018) ..... 18-19

*E.B. v. Landry,*
   No. 19-862-JWD-SDJ, 2020 U.S. Dist. LEXIS 177721 (M.D. La. Sept. 28, 2020) ........................................................................................... 16

*James v. Jacobson,*
   6 F.3d 233 (4th Cir. 1993) .............................................................. 18

*JMM Corp. v. Dist. of Columbia,*
   378 F.3d 1117 (D.C. Cir. 2004) ..................................................... 15

*MetLife, Inc. v. Fin. Stability Oversight Council,*
   865 F.3d 661, (D.C. Cir. 2017)....................................................... 15

*Nat'l Ass'n of Waterfront Emplrs. v. Chao,*
   587 F. Supp. 2d 90 (D.D.C. 2008) ................................................. 16

*Nixon v. U.S.,*
   506 U.S. 224 (1993) ..................................................................... 7-8

*R.F.M. v. Nielsen,*
   365 F. Supp. 3d 350 (S.D.N.Y. 2019) ........................................... 16

*In re Sealed Case,*
   931 F.3d 92 (D.C. Cir. 2019) .......................................................... 18

*In re Sealed Case,*
   971 F.3d 324 (D.C. Cir. 2020) ........................................... 18, 13, 14

*Sealed Plaintiff v. Sealed Defendant #1,*
   537 F.3d 185 (2d Cir. 2008) ........................................................... 18

*State, ex rel. Att'y Gen. v. Peters*,
 43 Ohio 629 (1885) ........................................................... 8

*U.S. v. Microsoft Corp.*,
 56 F.3d 1448 (D.C. Cir. 1995) ................................... 18, 13

*Willowick v. Langford*,
 15 Ohio App. 3d 33 (1984) ................................ 8

STATUTES

12 U.S.C. § 1822 ........................................................ 4

15 U.S.C. § 1681b ...................................................... 4

O.R.C. § 2967.04 (2024) ........................................... 7

O.R.C. § 2953.31 (2009) ........................................... 8

O.R.C. § 2967.03 (2024) ............................................ 7

O.R.C. § 2967.07 (2024) ............................................ 6

O.R.C. § 2967.12 (2024) ............................................ 7

O.R.C. § 2953.32 (2009) ..................................... 9, 10, 14

O.R.C. § 2953.32 (2024) ........................................... 10

O.R.C. § 2953.33 (2009) ........................................... 10

RULES

Federal Rule of Appellate Procedure 28 .................................. 3

OTHER

Ohio Const., art. III, §11 ....................................... 5-6

H.B. 33, 135th Gen. Assemb. (Ohio 2023) ........................... 9

S.B. 288, 134th Gen. Assemb. (Ohio 2023) ........................ 9

*Application for Executive Clemency*,
 OHIO PAROLE BD.,
 https://dam.assets.ohio.gov/image/upload/drc.ohio.gov/Clemency/Application%
 20for%20Executive%20Clemency.pdf ............................ 6

*Clemency*, OHIO DEP'T. OF REHAB. & CORR.,
 https://drc.ohio.gov/systems-and-services/1-parole/clemency ............................ 7

Michael Pinard,
  *Collateral Consequences of Criminal Convictions: Confronting Issues of Race
  and Dignity*, 85 N.Y.U. L. Rev. 457 (2010) ................................................. 5, 14

Cameron Kimble & Ames Grawert,
  *Collateral Consequences and the Enduring Nature of Punishment*, BRENNAN
  CTR. FOR JUST. (June 21, 2021),
  https://www.brennancenter.org/our-work/analysis-opinion/collateral-
  consequences-and-enduring-nature-punishment .................................................11

*Collateral Consequences: The Crossroads of Punishment, Redemption, and the
  Effects on Communities*, U.S. COMM. C.R. (June 2019),
  https://www.usccr.gov/files/pubs/2019/06-13-Collateral-
  Consequences.pdf ...............................................................................11, 13

Dallas Augustine, Noah Zatz & Naomi Sugie, *Why Do Employers Discriminate
  Against People With Records? Stigma and the Case for Ban the Box*, UCLA
  INSTITUTE FOR LAB. & EMP. (July 2020),
  https://irle.UCLA.edu/wp-content/uploads/2020/07/Criminal-Records-Final-
  6.pdf. ............................................................................................... 11

Devah Pager, *The Mark of a Criminal Record*,
  108 AM. J. Socio. 937 (2003) ..................................................................... 12

Devah Pager, Bruce Western & Naomi Sugie, *Sequencing Disadvantage: Barriers
  to Employment Facing Young Black and White Men with Criminal Records*,
  623 Ann. AM. ACAD. POL. SOC. SCI. 195, 199 (2009) ........................................12

Terry-Ann Craigie, Ames Grawert & Cameron Kimble, *Conviction, Imprisonment,
  and Lost Earnings*, BRENNAN CTR. FOR JUST. (Sept. 15, 2020),
  https://www.brennancenter.org/our-work/research-reports/conviction-
  imprisonment-and-lost-earnings-how-involvement-criminal............................12

**STATEMENTS OF INTEREST OF AMICI CURIAE**

*Amici curiae* have extensive expertise in advocating for the civil rights and fair treatment of formerly convicted and incarcerated individuals, including with respect to employment. *Amici curiae* include:

- **The Ohio Justice & Policy Center (OJPC):** OJPC is a 501(c)(3) nonprofit law firm with offices in Cincinnati and Columbus, Ohio. OJPC provides a spectrum of free legal services, programs, and resources for people marginalized by the criminal legal system. In 2004, OJPC launched its Second Chance Project to expand the freedom of people with criminal records to be fully contributing members of their communities. OJPC's Second Chance strategies include direct legal representation, community outreach and education, and policy advocacy. Through its community based Second Chance Legal Clinics, OJPC has served thousands of adults with advice, information, and court representation on post-conviction issues and relief tools that include criminal record sealing, expungement, pardon, and more. OJPC is keenly and deeply aware of the numerous ways in which a person can be forever stigmatized by the existence of a conviction—even if the individual has gone on to earn a pardon from the Governor. OJPC's experience provides an informed perspective on the value of executive pardons and the importance of sealing and expunging criminal records.

- **Community Legal Services, Philadelphia (CLS)**: CLS was founded by the Philadelphia Bar Association in 1966 as an independent 501(c)(3) organization to provide free legal services in civil matters to low-income Philadelphians. CLS has been on the forefront of advocacy for people with criminal convictions for several decades. Two-thirds of the clients who seek employment assistance from CLS do so because they cannot find a job or advance in their careers because of their criminal records. CLS pioneered the first-in-the-nation Clean Slate law to use technology to automate the sealing of certain criminal records. CLS also has a National Record Clearing Project, which provides support, assistance, and community advocates around the country who do record clearing work. CLS has seen firsthand the power of record clearing to allow people with criminal records a fair chance to access employment and other economic opportunities. CLS's expertise in

record clearing around the country leads us to have a strong interest in insuring that people whose records have been sealed, expunged or otherwise cleared do not continue to face discrimination and stigma due to information that can still be found online about their records. Protecting the confidentiality of individuals who have had their records cleared is essential to fulfilling the purpose of state record clearing laws.

- **Community Service Society of New York (CSS):** CSS is one of the first and oldest nonprofit charitable organizations in the nation with a longstanding mission to fight poverty by expanding and increasing participation in the workforce, public benefits systems, and civic life. Since 2008, CSS has provided direct legal services to people with criminal records by fixing mistakes in their criminal records, sealing eligible cases, and addressing open warrants. CSS has continuously fought for expanding sealing and expungement laws in New York because it is intimately familiar with how criminal records derogate individuals despite changes in heart and behavior. Last year, CSS co-led a coalition to win passage of the Clean Slate Act, which will automatically seal criminal convictions after a certain amount of time has passed. Driving support of this law, which came from businesses, unions, law enforcement, and advocacy organizations, was the belief that, at a certain point, the public's right to know about a conviction is outweighed by the individual's right to be free of the bias and discrimination the conviction causes, along with the government's strong interest in recognizing positive change and terminating the otherwise-perpetual punishment of a criminal record.

- **National Employment Law Project (NELP):** Founded in 1969, NELP is a nonprofit advocacy organization dedicated to building a just and inclusive economy in which all workers have expansive rights and thrive in good jobs. Over the past two decades, NELP's work to advance its mission has included a focus on the employment rights of workers with arrest and conviction records. Together with local, state, and national partners, NELP has worked to eliminate job barriers faced by people with records, who are disproportionately Black, Latinx, and Indigenous because of race disparities prevalent across the nation's criminal legal system. In addition to advocating for new and expanded worker rights, NELP recognizes the importance of robustly enforcing existing antidiscrimination rights and employer responsibilities.

- **Youth Represent:** Youth Represent is a non-profit legal services organization primarily serving young people in the New York City metropolitan area. Youth Represent uses legal services, policy advocacy, peer education, and other tools to build power and opportunity for Black, Latiné, and other youth of color who the criminal legal system and other systems of oppression harm the most. To accomplish its mission, Youth Represent focuses its strategic legal advocacy on dismantling discriminatory, outdated laws and practices that prevent our clients from escaping the enduring effects of mass incarceration and the prison industrial complex. Moreover, further proliferation of employment regulations and hiring practices that perpetually marginalize victims of mass incarceration creates unwarranted barriers to meaningful societal reintegration; thereby preventing individuals from distancing themselves from their past criminal legal system involvement.

## STATEMENT REGARDING STATUTES AND REGULATIONS

Pertinent statutes and regulations appear as an addendum to this brief, per Federal Rule of Appellate Procedure 28 and D.C. Circuit Rule 28(a)(5).

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff John Doe is a 51-year-old man who holds a doctorate degree and has served the federal government in various positions, including those requiring a security clearance with the Department of Homeland Security and the Internal Revenue Service, and the U.S. Bankruptcy Court, for more than 15 years.[1]

In 2022, Dr. Doe applied for and was offered a position with the Federal Deposit Insurance Corporation ("FDIC"). Upon learning of convictions that Dr. Doe

---

[1] Factual representations are taken from Plaintiff's Complaint ("Compl.") and are presumed true given the procedural posture of the litigation.

incurred as a teenager, the FDIC rescinded its offer pursuant to 12 U.S.C. § 1822(f)(4)(E)(i), which categorically bars the employment of individuals with prior felony convictions. In the more than thirty years since his convictions, Dr. Doe has not only demonstrated rehabilitation; in 2009 and 2010, he underwent a rigorous review process to have his convictions pardoned by the Governor of the State of Ohio and sealed by Ohio state courts, and he has worked fastidiously to maintain the sealed and confidential status of his records since then.

Through this litigation, Dr. Doe seeks to challenge the FDIC's categorical felony ban (which applies regardless of the age of conviction, passage of time, rehabilitative efforts, or the sealed or expunged status of such convictions) as unconstitutional under the Fifth Amendment's Equal Protection and Due Process provisions. He also brings a claim under the Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(3) ("FCRA") challenging the FDIC's failure to comply with FCRA's requirements in the handling of his criminal history information.

Without pseudonym status, however, Dr. Doe will be forced to choose between, on the one hand, maintaining the critical privacy protections granted to him via pardon and sealing under state law (which have, thus far, allowed him to continually advance in his career) and, on the other, vindicating his constitutional and statutory rights. Because the district court abused its discretion in failing to consider critically relevant factors, including the judicially sealed (and presumptively private) nature of Dr. Doe's convictions, the need for pseudonym

status to effectuate the relief Dr. Doe seeks through this suit, and the chilling effect of its ruling, the district court's order should be reversed.

## I.    ARGUMENT

### A.    The Governor and Courts of Ohio Have Already Determined That Dr. Doe's Criminal History Should Not Be Publicly Available Pursuant to Ohio Laws Intended to Protect the Privacy and Reputational Interests of Rehabilitated Individuals.

The Ohio Legislature has established narrow avenues for certain convicted individuals to receive protection from the consequences of their convictions through executive pardon and judicial sealing or expungement. These laws were passed to remove the social, economic, and legal barriers that otherwise attach to publicly searchable criminal records, and to effectively grant rehabilitated individuals a fresh start.

#### 1.    Dr. Doe Was Pardoned Pursuant to Ohio Laws Intended to Prevent Future Civil Disabilities, Restrictions or Punishments Based on Past Convictions.

Under Ohio law, the executive pardon is a rare remedy available only to those who meet specific procedural requirements and who demonstrate substantial rehabilitation pursuant to a rigorous and lengthy review process subject to the discretion of the Governor. *See* OHIO CONST., art. III, §11 (granting the Governor "power, after conviction, to grant reprieves, commutations, and pardons…upon such conditions as the governor may think proper[.]"); *see also* Michael Pinard, *Collateral Consequences of Criminal Convictions: Confronting Issues of Race and*

*Dignity*, 85 N.Y.U. L. Rev. 457, 505 (2010) (like presidential pardons, state pardons are "very rare").

All applications for pardon must be submitted in writing to the Ohio Adult Parole Board (the "Board"). OHIO REV. CODE ANN. ("O.R.C.") § 2967.07 (2024). The 10-page application requires the applicant to submit detailed, comprehensive information relating to their arrest and conviction record, as well as their family history, education, military history, substance abuse and associated treatment, employment and participation in volunteer or community involvement.[2] Applicants must provide copies of their criminal court records (which are typically obtained from the sentencing court's clerk for a fee, and which can be difficult to locate, particularly for older convictions) and a detailed statement describing the nature and circumstances surrounding the offense(s), and reasons for requesting a pardon. *Id.* Applicants also attach supporting documents such as letters of recommendation, diplomas, certificates, and other proof of rehabilitation. *Id.*

Once the Board receives the required application materials, it conducts an investigation. If it finds the application meritorious, it holds an evidentiary hearing with the applicant, the prosecutor and any interested parties, including victims of the applicant's offense (after providing required notice to the relevant courts,

---

[2] *Application for Executive Clemency*, OHIO PAROLE BD., https://dam.assets.ohio.gov/image/upload/drc.ohio.gov/Clemency/Application%20f or%20Executive%20Clemency.pdf (last visited May 31, 2024).

prosecutors and victims), with the purpose of determining whether granting a pardon would further "the interests of justice and be consistent with the welfare and security of society." O.R.C. §§ 2967.03, 2967.12(A),(B) (2024).[3] There is no fixed timeframe for the Board to undertake its investigation, and applicants often wait years for an evidentiary hearing.

After the hearing, the Board provides a summary report with a reasoned recommendation for or against pardon.[4] The Governor has complete discretion to grant or deny pardons, with no fixed timeline and no right of appeal. Under Ohio law, an unconditional pardon (i.e., one granted without conditions precedent or subsequent, such as Dr. Doe's) is a forward-looking form of relief intended to "*relieve[] the person to whom it is granted of all disabilities* arising out of the conviction or convictions from which it is granted." O.R.C § 2967.04(B) (emphasis added); *see also Nixon v. U.S.*, 506 U.S. 224, 232 (1993) (a pardon does not overturn a conviction, but rather "mitigates or sets aside punishment for a crime"); *State, ex rel. Att'y Gen. v. Peters*, 43 Ohio 629, 650 (1885) ("A full and absolute pardon releases the offender from the entire punishment prescribed for his offense, and from all the disabilities consequent on his conviction").

---

[3] *See also Clemency*, OHIO DEP'T. OF REHAB. & CORR., https://drc.ohio.gov/systems-and-services/1-parole/clemency (last visited May 31, 2024).
[4] *Id.*

### 2. The Ohio Court's Sealing of Dr. Doe's Convictions Was Intended to Prevent Public Disclosure of his Criminal History.

As with an executive pardon, the sealing or expungement of criminal convictions in Ohio is only available to individuals who meet qualifying criteria, and who are found deserving of the privacy protections afforded by sealing or expungement following a stringent, time-intensive and sometimes-contested review process. In 2009, when Dr. Doe initiated his sealing process, the applicable statute only permitted "first offenders" (those with no more than three closely related convictions) to apply for sealing. O.R.C. § 2953.31 (2009). Eligible applicants had to further demonstrate that they had achieved "final discharge," which required the completion of all court-ordered sentences, such as probation or parole, and the satisfaction of all court fines, fees, and restitution. *Willowick v. Langford*, 15 Ohio App. 3d 33, 34 (1984) (citing O.R.C. § 2953.32). Applicants also had to exhaust the relevant statutory waiting period (three years after completing final discharge for a felony) and demonstrate that they had no pending criminal proceedings.

With these preliminary requirements satisfied, applicants could submit a sealing application (with the required filing fee) to each sentencing court. Applicants were then required to respond to the prosecutor's written objections and attend a court hearing to respond to any oral objections raised by the prosecutor and questions raised by the presiding judge. O.R.C. § 2953.32 (2009).

The reviewing sentencing court had broad discretion to grant or deny sealing based on a balancing test that considered, inter alia, "*whether the applicant has been rehabilitated to the satisfaction of the court,*" ultimately weighing "*the interests of the applicant in having the records pertaining to the applicant's conviction sealed* against *the legitimate needs*, if any, *of the government to maintain those records.*" O.R.C. § 2953.32(C)(1) (2009) (emphasis added). If the court found that the applicant's privacy interests outweighed the government's interests, then sealing was granted, and all records relating to the applicable convictions were sealed and preserved only for extremely limited purposes relating to specific criminal law enforcement and sentencing needs. O.R.C. § 2953.32(D)-(F) (2009).[5] Both in 2009, and now, the legal effect of sealing is that the "proceedings in the case *shall be considered not to have occurred* and the conviction . . . of the person who is the subject of the proceedings *shall be sealed* except [for sentencing purposes in any subsequent criminal proceeding]." O.R.C. § 2953.32(C)(1)(e)(2) (2009); *Id.* § 2953.32(D)(2)(b) (2024).

---

[5] In 2023, Ohio passed Senate Bill 288 and House Bill 33, which created a separate process for individuals to have criminal convictions permanently deleted and expunged. S.B. 288, 134th Gen. Assemb. (Ohio 2023); H.B. 33, 135th Gen. Assemb. (Ohio 2023). Prior to this, Ohio courts used the terms "sealing" and "expungement" interchangeably and synonymously to refer to the suppression of all public conviction records apart from very limited circumstances relating to law enforcement.

Thus, when the Ohio Court of Common Pleas entered an order of expungement as to Dr. Doe's pardoned convictions in 2010, it specifically determined that Dr. Doe's interests in keeping his criminal history information private outweighed the government's interests in public access, and therefore required that his criminal records be sealed, all references to his convictions deleted, and that the proceedings in his case be legally deemed "not to have occurred." Compl. ¶ 39; *see also* O.R.C. § 2953.32(C)(1)(e)(2) (2009); *id.* § 2953.33 (2009) (requiring individuals with sealed convictions to be "restore[d]" to "all rights and privileges."). Requiring Dr. Doe to disclose his identity as a precondition to proceed in federal court effectively nullifies the protections afforded to him under state law, and forces Dr. Doe, and others like him, to make a false choice between abandoning the fresh start they worked so hard to attain or foregoing the right to challenge unconstitutional laws in federal court.

**B.** **The Disclosure of Criminal History Information Is Inherently Stigmatizing and Leads to Serious Collateral Consequences.**

Collateral consequences of criminal convictions include laws, policies, and biases that disqualify, or otherwise restrict, convicted individuals' access to employment, education, housing, and other basic forms of civic, economic, and social life.[6] Without the protections afforded by sealing, expungement, and

---

[6] Cameron Kimble & Ames Grawert, *Collateral Consequences and the Enduring Nature of Punishment*, BRENNAN CTR. FOR JUST. (June 21, 2021),

pardon, collateral consequences can have devastating and enduring impacts on convicted individuals and their families, particularly with respect to employment.

Of the over 44,000 collateral consequences under state and federal law, approximately 70% involve employment restrictions for people with criminal convictions.[7]  In addition to legal bars (such as FDIC's), private companies also operate under policies and biases that disfavor individuals with prior convictions in hiring and promotions.[8]  One landmark study showed that the callback rate for white applicants decreased by half (from 34 to 17 percent) and dropped by nearly two-thirds (from 14 to 5 percent) for Black applicants who revealed a criminal record on their application.[9]

These bans, policies and biases can have a devastating effect on an individual's career prospects and earning potential over the course of lifetime.  As compared with their otherwise similarly-situated peers, formerly incarcerated

---

https://www.brennancenter.org/our-work/analysis-opinion/collateral-consequences-and-enduring-nature-punishment.

[7] *Collateral Consequences: The Crossroads of Punishment, Redemption, and the Effects on Communities*, U.S. COMM. C.R. (June 2019), at 35, https://www.usccr.gov/files/pubs/2019/06-13-Collateral-Consequences.pdf.

[8] Dallas Augustine, Noah Zatz & Naomi Sugie, *Why Do Employers Discriminate Against People With Records? Stigma and the Case for Ban the Box*, UCLA INSTITUTE FOR LAB. & EMP. (July 2020), at 1, https://irle.ucla.edu/wp-content/uploads/2020/07/Criminal-Records-Final-6.pdf.

[9] Devah Pager, *The Mark of a Criminal Record*, 108 AM. J. SOCIO. 937, 958 (2003); *see also* Devah Pager, Bruce Western & Naomi Sugie, *Sequencing Disadvantage: Barriers to Employment Facing Young Black and White Men with Criminal Records*, 623 ANN. AM. ACAD. POL. SOC. SCI. 195, 199 (2009).

individuals earn approximately 50% less annually, and those who have felony

convictions but were not incarcerated earn about 22% less.[10]  One 2017 study

estimated lost earnings due to felony convictions alone at $77.1 billion annually,

further expanding racial and socioeconomic gaps based on the overrepresentation

of Black and Latino communities, and those impacted by poverty, within the

criminal justice system.[11]

In this context, record sealing and expungement function as a powerful tool

(and indeed one of the only available tools) for rehabilitated individuals, allowing

them to shield their criminal records from public inquiry, lawfully refrain from

reporting sealed convictions, and protecting them from the reach of otherwise

enduring collateral consequences.[12]

### C. The District Court Failed to Consider the Significant Privacy Interests That the Ohio State Governor and Courts Have Already Granted Dr. Doe Through Pardon and Sealing.

Forcing an individual to publicly disclose identifying records that have been

hidden for years by operation of state law as a condition to bringing a federal

---

[10] Terry-Ann Craigie, Ames Grawert & Cameron Kimble, *Conviction, Imprisonment, and Lost Earnings*, BRENNAN CTR. FOR JUST. (Sept. 15, 2020), at 6-7, https://www.brennancenter.org/our-work/research-reports/conviction-imprisonment-and-lost-earnings-how-involvement-criminal.
[11] *Id.*
[12] *Collateral Consequences: The Crossroads of Punishment, Redemption, and the Effects on Communities*, U.S. COMM. C.R. (June 2019), at 58, https://www.usccr.gov/files/pubs/2019/06-13-Collateral-Consequences.pdf.

lawsuit is not only unfair, it also and runs counter to the fundamental principles underlying pseudonym motions.

As this Court has made clear, the "presumption of openness" in federal proceedings is rooted in the notion that, in exercising their judicial authority, courts must "satisfy *the appearance of justice*," which typically flows from public observation. *In re Sealed Case*, 971 F.3d 324, 325-26 (D.C. Cir. 2020) (emphasis added) (quoting *Richmond Newspapers v. Virginia*, 448 U.S. 555, 571-72 (1980) (other citations omitted)). In most cases, requiring parties to "openly identify themselves" serves the *public's* "*legitimate interest* in knowing all of the facts involved, including the identities of the parties." *U.S. v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995) (emphasis added) (citation omitted).

This general presumption of access, however, should not apply to information that state courts have already found (after a hearing and opportunity for prosecutorial challenge) to be *presumptively private*, including sealed and expunged criminal history information. Here, an Ohio court has already conducted its own balancing inquiry (similar to the applicable standard here) and determined that *Dr. Doe's privacy interest outweighs not only the public's interest, but also the government's interest* in maintaining his criminal history information. Accordingly, the district court erred in treating Dr. Doe's identifying criminal history as presumptively "public" when another court has already ordered that it

13

should *not be publicly available*, but rather should be sealed and "considered not to have occurred." O.R.C. § 2953.32(C)(1)(e)(2) (2009).

While federal law does not provide for the sealing or expungement of federal crimes, many states, including Ohio, have adopted these mechanisms to advance public policy goals of enabling rehabilitated individuals to overcome their past and the otherwise serious collateral consequences of their convictions.[13] Thus, while the purpose of open court access is to "*satisfy the appearance of justice*," *In re Sealed Case*, 971 F.3d at 325-26, when a federal court promotes open access at the expense of a state court's prior judicial rulings and state policy interests, this only serves to diminish confidence in the integrity of the justice system, rather than strengthen it. It also raises comity and federalism concerns by effectively "interfere[ing] with a state judicial proceeding" and "disrupt[ing] the State's efforts to protect interests which it deems important." *JMM Corp. v. Dist. of Columbia*, 378 F.3d 1117, 1122 (D.C. Cir. 2004) (quoting *Huffman v. Pursue*, 420 U.S. 592, 604, 608 (1975)).

By and failing to weigh (and indeed, completely disregarding) the presumptively private nature of Dr. Doe's sealed records under Ohio law, and instead treating them as presumptively public information, the District Court abused its discretion. *See Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 76 (1st Cir.

---

[13] Michael Pinard, *Collateral Consequences of Criminal Convictions: Confronting Issues Of Race And Dignity*, 85 N.Y.U.L. REV. 457, 504-05 n.283-85.

2022) ("courts cannot ignore the background confidentiality regime [created by statutes requiring confidential treatment of certain information] in assessing the circumstances relevant to a request for pseudonymity");[14] *Doe v. Ronan*, No. 1:09cv243, 2009 U.S. Dist. LEXIS 147007, at *1 (S.D. Ohio June 4, 2009) (granting pseudonym motion after "giving consideration" to fact that the relevant criminal record "has been expunged" and therefore is treated as "not having occurred" under Ohio law).[15]

### D. The Court Failed to Consider or Weigh the Interdependent Nature of Dr. Doe's Lawsuit and His Pseudonym Motion.

Courts in this Circuit and elsewhere have recognized that pseudonymous litigation should be permitted where "the injury litigated against would be incurred

---

[14] In reaching its holding in *Doe v. Mass. Inst. of Tech.*, the First Circuit explicitly relied on this Court's reasoning in the "analogous context of a motion to unseal documents that a federal agency would otherwise be prohibited from disclosing by statute." 46 F.4th at 76 (citing *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 675 (D.C. Cir. 2017)). As this Court held in *MetLife*, even a statute that "does not categorically protect the sealed information" may "represent a [legislative] judgment about the importance of maintaining the confidentiality" of such information, and thus, the statutory "confidentiality provision *should weigh heavily in*" the district court's balancing. 865 F.3d at 675 (emphasis added). In the same way, here, the district court should have carefully weighed the important confidentiality interests embodied in Ohio's sealing and expungements statues.

[15] *See also R.F.M. v. Nielsen,* 365 F. Supp. 3d 350, 371 (S.D.N.Y. 2019) (granting pseudonym status to adult plaintiffs challenging denial of "special immigrant juvenile" status due to family court adjudications, in part because "related records from the New York Family Courts are protected by law"); *Doe v. Bates*, No. 3:18-cv-1250, 2018 U.S. Dist. LEXIS 161981, at *1 (S.D. Ill. Sept. 21, 2018) (granting pseudonym status to adult plaintiff bringing excessive force claim arising from juvenile detention because "revealing his identity would, in effect, unravel the protections afforded to his juvenile record").

as a result of the disclosure of the plaintiff's identity." *Nat'l Ass'n of Waterfront Emplrs. v. Chao*, 587 F. Supp. 2d 90, 99-100 (D.D.C. 2008) (quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992)). For example, in *E.B. v. Landry*, No. 19-862-JWD-SDJ, 2020 U.S. Dist. LEXIS 177721 (M.D. La. Sept. 28, 2020), plaintiffs challenged the constitutionality of state laws that made expungement prohibitively expensive. Because requiring plaintiffs to disclose their names (and thus their identities as convicted individuals) would "put[] the exact information they seek to expunge within reach of a simple internet search by an employer or landlord" the court granted their request to proceed pseudonymously. *Id.* at \*3, \*9; *see also id.* at \*6, \*10-15 (noting "serious risk of harm" from disclosure and discussing "ample evidence that applicants are consistently denied employment opportunities based on their criminal records").[16]

Here, Dr. Doe raises constitutional challenges to the FDIC's ban, which categorically bars the employment of convicted individuals, regardless of rehabilitation, sealing or expungement, and statutory challenges to its handling of his criminal history information. Dr. Doe's lawsuit seeks to exercise the privileges

---

[16] Similarly, in *Doe v. Harris*, 640 F.3d 972 (9th Cir. 2011), plaintiff challenged the retroactive application of California's "Megan's Law," (which granted public access to the sex offender registry), under his plea agreement, (which was predicated on registration under a non-public registry). The court permitted plaintiff to proceed pseudonymously because it understood that "drawing public attention to his status as a sex offender is precisely the consequence that he seeks to avoid by bringing this suit." *Id.* at 973 n.1.

and privacy protections afforded him by state pardon and sealing, namely the equal opportunity to be considered for employment as if his convictions were "considered not to have occurred." But, as described in Dr. Doe's Motion, in the absence of pseudonym status, he will not be able to prosecute his claims without sacrificing the very protections he seeks to exercise through this suit.

In other words, while the instant lawsuit seeks to resolve one discrete injury (Dr. Doe's unjust rejection from one FDIC position), requiring him to proceed publicly—thereby broadcasting in a quintessentially public forum the convictions he has worked so hard to seal—would inflict innumerable future injuries, not only with respect to diminished future employment prospects, but also collateral consequences in every other area of his civic, economic and social life. The interconnected relationship between Dr. Doe's lawsuit and his pseudonym motion is a relevant consideration, and the district court abused its discretion in failing to consider or weigh it.[17]

---

[17] This Court has made clear that the five factors identified in *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993) are "non-exhaustive." *In re Sealed Case*, 971 F.3d at 326. Courts *must* "take into account *other factors relevant to the particular case under consideration*," *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 189-90 (2d Cir. 2008) (emphasis added); *see also Microsoft Corp.*, 56 F.3d at 1464 (courts have "*a judicial duty to inquire into the circumstances of particular cases*" to determine whether pseudonym status is warranted") (emphasis added). Instead of considering all the relevant factors raised by Plaintiff's Motion, the district court merely engaged "in a wooden exercise of ticking the five boxes," which, here, amounts to an abuse of discretion. *Cf. In re Sealed Case*, 931 F.3d 92 at 97 (D.C. Cir. 2019) (court does not abuse its discretion "as long as it has considered the factors relevant to the case before it").

**E.   The Court Failed to Consider the Substantial Chilling Effect That Public Disclosure Will Have on Litigants Seeking to Vindicate Constitutional and Statutory Rights Relating to Sealed or Expunged Convictions.**

Finally, as discussed at length in Dr. Doe's Motion, courts in this Circuit and elsewhere have recognized that the "interest in anonymity is particularly great" when there is a risk that forcing stigmatized plaintiffs to disclose personal information "could deter litigants from filing claims to vindicate their rights." *Doe v. Sessions*, No. 18-0004, 2018 U.S. Dist. LEXIS 165829, at *11 (D.D.C. Sept. 27, 2018) (pseudonymous litigation appropriate where public disclosure would deter litigants seeking to protect sensitive personal information from "ever reaching the courthouse steps . . . for fear of repercussions that would ensue if their condition was made public"); *Mass. Inst. of Tech.*, 46 F.4th at 71 (pseudonymity should be granted where "necessary to forestall a chilling effect on future litigants who may be similarly situated" (citing *Talamini v. Allstate Ins. Co.,* 470 U.S. 1067, 1070-71 (1985) (courts must be wary of "deter[ring]  the legitimate exercise of the right to seek a peaceful redress of grievances through judicial means")) (Stevens, J., concurring).

Forcing Dr. Doe, and others with years- or decades-old, sealed convictions, to publicly reveal their convictions as a precondition to challenging criminal history laws in court will undeniably deter such lawsuits. Given the invaluable protections that sealing and expungement afford against the backdrop of serious

and perpetual collateral consequences, Dr. Doe and others in his shoes simply have too much to lose by publicly revealing their criminal convictions. Once their identity is disclosed in public court filings, all the effort they invested in keeping their records sealed, and all the protections and privileges afforded by sealing and expungement are rendered meaningless, and there is no remedy to undo the harm caused by such disclosure. *See, e.g.*, *Doe 1 v. George Wash. Univ.,* 369 F. Supp. 3d 49, 65-66 (D.D.C. 2019) (Compelling plaintiffs to disclose their identity makes their names, and here, associated criminal history allegations, "indefinitely available to the public").

Not only does this expose Dr. Doe and others to serious harm; it also undermines the evolution of constitutional law and the advancement of public policy by discouraging those with a direct and highly personal interest in criminal justice reform from exercising their rights. *See BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 532 (2002) (whether successful or not, lawsuits raising constitutional issues allow for the "public airing of disputed facts" as to "matters of public concern" and "promote the evolution of the law by supporting the development of legal theories that may not gain acceptance the first time around." This too is a relevant consideration that Dr. Doe raised, and the district court abused its discretion in failing to consider it.

# CONCLUSION

For the reasons set forth above, *amici curiae* respectfully request that this

Court reverse the order of the district court.

Dated: June 4, 2024

Respectfully submitted,

OUTTEN & GOLDEN LLP
Sue Huhta
Ossai Miazad
1225 New York Ave, Suite 1200,
Washington, DC 20005
Telephone: (202) 914–5097
Facsimile: (202) 847-4410

OUTTEN & GOLDEN LLP
Moira Heiges-Goepfert*
Once California, 12th Floor,
San Francisco, CA 94111
Telephone: (415) 322-1391
Facsimile: (415) 638-8810

OUTTEN & GOLDEN LLP
Zarka Dsouza**
685 Third Ave, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

By: */s/ Sue Huhta*
    Sue Huhta
    *Attorneys for Amici Curiae*

**CERTIFICATE REGARDING LENGTH OF BRIEF AND TYPEFACE**

The undersigned counsel provides the following certifications required by the Federal Rules of Appellate Procedure and/or the D.C. Circuit Rules:

1.  As required by Rule 32(g) of the Federal Rules of Appellate Procedure, I certify that this brief complies with the type-volume limitation of Rules 29(a)(5) and 32(a)(7)(B) of the Federal Rules of Appellate Procedure because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 4,928 words.

2.  I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in 14-point Times New Roman font using Microsoft Word.

By: */s/ Sue Huhta*_____
    Sue Huhta

*Attorneys for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 4, 2024, the foregoing brief was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

By: */s/ Sue Huhta*_____
      Sue Huhta

*Attorneys for Amici Curiae*

# ADDENDUM

# INDEX

O.R.C. § 2953.31 (2009)...............................................................................1

O.R.C. § 2953.32 (2009)...............................................................................3

O.R.C. § 2953.32 (2024).............................................................................12

O.R.C. § 2953.33 (2009).............................................................................25

O.R.C. § 2967.03 (2024).............................................................................26

O.R.C. § 2967.04 (2024).............................................................................26

O.R.C. § 2967.12 (2024).............................................................................31

# ADDENDUM

# OHIO REVISED CODE: TITLE 29

**O.R.C. § 2953.31 (2009): Definitions**

As used in sections 2953.31 to 2953.36 of the Revised Code:

(A)     "First offender" means anyone who has been convicted of an offense in this state or any other jurisdiction and who previously or subsequently has not been convicted of the same or a different offense in this state or any other jurisdiction. When two or more convictions result from or are connected with the same act or result from offenses committed at the same time, they shall be counted as one conviction. When two or three convictions result from the same indictment, information, or complaint, from the same plea of guilty, or from the same official proceeding, and result from related criminal acts that were committed within a three-month period but do not result from the same act or from offenses committed at the same time, they shall be counted as one conviction, provided that a court may decide as provided in division (C) (1) (a) of section 2953.32 of the Revised Code that it is not in the public interest for the two or three convictions to be counted as one conviction. For purposes of, and except as otherwise provided in, this division, a conviction for a minor misdemeanor, for a violation of any section in Chapter 4507., 4510., 4511., 4513., or 4549. of the Revised Code, or for a violation of a municipal

ordinance that is substantially similar to any section in those chapters is not a previous or subsequent conviction. However, a conviction for a violation of section 4511.19, 4511.251, 4549.02, 4549.021, 4549.03, 4549.042, or 4549.62 or sections 4549.41 to 4549.46 of the Revised Code, for a violation of section 4510.11 or 4510.14 of the Revised Code that is based upon the offender's operation of a vehicle during a suspension imposed under section 4511.191 or 4511.196 of the Revised Code, for a violation of a substantially equivalent municipal ordinance, for a felony violation of Title XLV of the Revised Code, or for a violation of a substantially equivalent former law of this state or former municipal ordinance shall be considered a previous or subsequent conviction.

(B)     "Prosecutor" means the county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer, who has the authority to prosecute a criminal case in the court in which the case is filed.

(C)     "Bail forfeiture" means the forfeiture of bail by a defendant who is arrested for the commission of a misdemeanor, other than a defendant in a traffic case as defined in Traffic Rule 2 if the forfeiture is pursuant to an agreement with the court and prosecutor in the case.

(D)     "Official records" has the same meaning as in division (D) of section 2953.51 of the Revised Code.

(E)     "Official proceeding" has the same meaning as in section 2921.01 of the Revised Code.

(F)     "Community control sanction" has the same meaning as in section 2929.01 of the Revised Code.

(G)     "Post-release control" and "post-release control sanction" have the same meanings as in section 2967.01 of the Revised Code.

**O.R.C. § 2953.32 (2009): Sealing of Record of Conviction or Bail Forfeiture**

(A)

(1)     Except as provided in section 2953.61 of the Revised Code, a first offender may apply to the sentencing court if convicted in this state, or to a court of common pleas if convicted in another state or in a federal court, for the sealing of the conviction record. Application may be made at the expiration of three years after the offender's final discharge if convicted of a felony, or at the expiration of one year after the offender's final discharge if convicted of a misdemeanor.

(2)     Any person who has been arrested for any misdemeanor offense and who has effected a bail forfeiture may apply to the court in which the misdemeanor criminal case was pending when bail was forfeited for the sealing of the record of the case. Except as provided in section 2953.61 of the Revised Code, the application may be filed at any time after the

expiration of one year from the date on which the bail forfeiture was entered upon the minutes of the court or the journal, whichever entry occurs first.

(B)     Upon the filing of an application under this section, the court shall set a date for a hearing and shall notify the prosecutor for the case of the hearing on the application. The prosecutor may object to the granting of the application by filing an objection with the court prior to the date set for the hearing. The prosecutor shall specify in the objection the reasons for believing a denial of the application is justified. The court shall direct its regular probation officer, a state probation officer, or the department of probation of the county in which the applicant resides to make inquiries and written reports as the court requires concerning the applicant.

(C) (1) The court shall do each of the following:

(a)     Determine whether the applicant is a first offender or whether the forfeiture of bail was agreed to by the applicant and the prosecutor in the case. If the applicant applies as a first offender pursuant to division (A)(1) of this section and has two or three convictions that result from the same indictment, information, or complaint, from the same plea of guilty, or from the same official proceeding, and result from related criminal acts that were

committed within a three-month period but do not result from the same act or from offenses committed at the same time, in making its determination under this division, the court initially shall determine whether it is not in the public interest for the two or three convictions to be counted as one conviction. If the court determines that it is not in the public interest for the two or three convictions to be counted as one conviction, the court shall determine that the applicant is not a first offender; if the court does not make that determination, the court shall determine that the offender is a first offender.

(b)     Determine whether criminal proceedings are pending against the applicant;

(c)     If the applicant is a first offender who applies pursuant to division (A)(1) of this section, determine whether the applicant has been rehabilitated to the satisfaction of the court;

(d)     If the prosecutor has filed an objection in accordance with division (B) of this section, consider the reasons against granting the application specified by the prosecutor in the objection;

(e)     Weigh the interests of the applicant in having the records pertaining to the applicant's conviction sealed against the legitimate needs, if any, of the government to maintain those records.

(2)    If the court determines, after complying with division (C)(1) of this section, that the applicant is a first offender or the subject of a bail forfeiture, that no criminal proceeding is pending against the applicant, and that the interests of the applicant in having the records pertaining to the applicant's conviction or bail forfeiture sealed are not outweighed by any legitimate governmental needs to maintain those records, and that the rehabilitation of an applicant who is a first offender applying pursuant to division (A)(1) of this section has been attained to the satisfaction of the court, the court, except as provided in division (G) of this section, shall order all official records pertaining to the case sealed and, except as provided in division (F) of this section, all index references to the case deleted and, in the case of bail forfeitures, shall dismiss the charges in the case. The proceedings in the case shall be considered not to have occurred and the conviction or bail forfeiture of the person who is the subject of the proceedings shall be sealed, except that upon conviction of a subsequent offense, the sealed record of prior

conviction or bail forfeiture may be considered by the court in determining the sentence or other appropriate disposition, including the relief provided for in *sections 2953.31* to *2953.33 of the Revised Code*.

(3)     Upon the filing of an application under this section, the applicant, unless indigent, shall pay a fee of fifty dollars. The court shall pay thirty dollars of the fee into the state treasury. It shall pay twenty dollars of the fee into the county general revenue fund if the sealed conviction or bail forfeiture was pursuant to a state statute, or into the general revenue fund of the municipal corporation involved if the sealed conviction or bail forfeiture was pursuant to a municipal ordinance.

(D)     Inspection of the sealed records included in the order may be made only by the following persons or for the following purposes:

(1)     By a law enforcement officer or prosecutor, or the assistants of either, to determine whether the nature and character of the offense with which a person is to be charged would be affected by virtue of the person's previously having been convicted of a crime;

(2)     By the parole or probation officer of the person who is the subject of the records, for the exclusive use of the officer in supervising the person while on parole or under a community control sanction or a post-release

control sanction, and in making inquiries and written reports as requested by the court or adult parole authority;

(3)     Upon application by the person who is the subject of the records, by the persons named in the application;

(4)     By a law enforcement officer who was involved in the case, for use in the officer's defense of a civil action arising out of the officer's involvement in that case;

(5)     By a prosecuting attorney or the prosecuting attorney's assistants, to determine a defendant's eligibility to enter a pre-trial diversion program established pursuant to section 2935.36 of the Revised Code;

(6)     By any law enforcement agency or any authorized employee of a law enforcement agency or by the department of rehabilitation and correction as part of a background investigation of a person who applies for employment with the agency as a law enforcement officer or with the department as a corrections officer;

(7)     By any law enforcement agency or any authorized employee of a law enforcement agency, for the purposes set forth in, and in the manner provided in, section 2953.321 [2953.32.1] of the Revised Code;

(8)     By the bureau of criminal identification and investigation or any authorized employee of the bureau for the purpose of providing information to a board or person pursuant to division (F) or (G) of section 109.57 of the Revised Code;

(9)     By the bureau of criminal identification and investigation or any authorized employee of the bureau for the purpose of performing a criminal history records check on a person to whom a certificate as prescribed in section 109.77 of the Revised Code is to be awarded;

(10)    By the bureau of criminal identification and investigation or any authorized employee of the bureau for the purpose of conducting a criminal records check of an individual pursuant to division (B) of section 109.572 [109.57.2] of the Revised Code that was requested pursuant to any of the sections identified in division (B)(1) of that section;

(11)    By the bureau of criminal identification and investigation, an authorized employee of the bureau, a sheriff, or an authorized employee of the sheriff in connection with a criminal records check described in section 311.41 of the Revised Code;

(12)   By the attorney general or an authorized employee of the attorney general or a court for purposes of determining a person's classification pursuant to Chapter 2950. of the Revised Code.

When the nature and character of the offense with which a person is to be charged would be affected by the information, it may be used for the purpose of charging the person with an offense.

(E)   In any criminal proceeding, proof of any otherwise admissible prior conviction may be introduced and proved, notwithstanding the fact that for any such prior conviction an order of sealing previously was issued pursuant to sections 2953.31 to 2953.36 of the Revised Code.

(F)   The person or governmental agency, office, or department that maintains sealed records pertaining to convictions or bail forfeitures that have been sealed pursuant to this section may maintain a manual or computerized index to the sealed records. The index shall contain only the name of, and alphanumeric identifiers that relate to, the persons who are the subject of the sealed records, the word "sealed," and the name of the person, agency, office, or department that has custody of the sealed records, and shall not contain the name of the crime committed. The index shall be made available by the person who has custody of the sealed records only for the purposes set forth in divisions (C), (D), and (E) of this section.

(G)  Notwithstanding any provision of this section or section 2953.33 of the Revised Code that requires otherwise, a board of education of a city, local, exempted village, or joint vocational school district that maintains records of an individual who has been permanently excluded under sections 3301.121 [3301.12.1] and 3313.662 [3313.66.2] of the Revised Code is permitted to maintain records regarding a conviction that was used as the basis for the individual's permanent exclusion, regardless of a court order to seal the record. An order issued under this section to seal the record of a conviction does not revoke the adjudication order of the superintendent of public instruction to permanently exclude the individual who is the subject of the sealing order. An order issued under this section to seal the record of a conviction of an individual may be presented to a district superintendent as evidence to support the contention that the superintendent should recommend that the permanent exclusion of the individual who is the subject of the sealing order be revoked. Except as otherwise authorized by this division and sections 3301.121 [3301.12.1] and 3313.662 [3313.66.2] of the Revised Code, any school employee in possession of or having access to the sealed conviction records of an individual that were the basis of a permanent exclusion of the individual is subject to section 2953.35 of the Revised Code.

**O.R.C. § 2953.32 (2024): Sealing of Record of Conviction or Bail Forfeiture**

(A)

    (1)    Sections 2953.32 to 2953.34 of the Revised Code do not apply to any of the following:

        (a)    Convictions under Chapter 4506., 4507., 4510., 4511., or 4549. of the Revised Code, or a conviction for a violation of a municipal ordinance that is substantially similar to any section contained in any of those chapters;

        (b)    Convictions of a felony offense of violence that is not a sexually oriented offense;

        (c)    Convictions of a sexually oriented offense when the offender is subject to the requirements of Chapter 2950. of the Revised Code or Chapter 2950. of the Revised Code as it existed prior to January 1, 2008;

        (d)    Convictions of an offense in circumstances in which the victim of the offense was less than thirteen years of age, except for convictions under section 2919.21 of the Revised Code;

        (e)    Convictions of a felony of the first or second degree;

(f)    Except as provided in division (A)(2) of this section, convictions for a violation of section 2919.25 or 2919.27 of the Revised Code or a conviction for a violation of a municipal ordinance that is substantially similar to either section;

(g)    Convictions of a felony of the third degree if the offender has more than one other conviction of any felony or, if the person has exactly two convictions of a felony of the third degree, has more convictions in total than those two third degree felony convictions and two misdemeanor convictions.

(2)    Sections 2953.32 to 2953.34 of the Revised Code apply to a conviction for a violation of section 2919.25 of the Revised Code that is a misdemeanor of the fourth degree for purposes of sealing, but not for purposes of expungement of the record of the case.

(B)

(1)    Except as provided in section 2953.61 of the Revised Code or as otherwise provided in division (B)(1)(a)(iii) of this section, an eligible offender may apply to the sentencing court if convicted in this state, or to a court of common pleas if convicted in another state or in a federal court, for the sealing or expungement of the record of the case that pertains to the conviction, except for convictions listed in division

(A)(1) of this section. Application may be made at whichever of the following times is applicable regarding the offense:

(a) An application for sealing under this section may be made at whichever of the following times is applicable regarding the offense:

(i) Except as otherwise provided in division (B)(1)(a)(iv) of this section, at the expiration of three years after the offender's final discharge if convicted of one or two felonies of the third so long as none of the offenses is a violation of section 2921.43 of the Revised Code;

(ii) Except as otherwise provided in division (B)(1)(a)(iv) of this section, at the expiration of one year after the offender's final discharge if convicted of one or more felonies of the fourth or fifth degree or one or more misdemeanors, so long as none of the offenses is a violation of section 2921.43 of the Revised Code or a felony offense of violence;

(iii) At the expiration of seven years after the offender's final discharge if the record includes one or more convictions

of soliciting improper compensation in violation of section 2921.43 of the Revised Code;

(iv)    If the offender was subject to the requirements of Chapter 2950. of the Revised Code or Chapter 2950. of the Revised Code as it existed prior to January 1, 2008, at the expiration of five years after the requirements have ended under section 2950.07 of the Revised Code or section 2950.07 of the Revised Code as it existed prior to January 1, 2008, or are terminated under section 2950.15 or 2950.151 of the Revised Code;

(v)    At the expiration of six months after the offender's final discharge if convicted of a minor misdemeanor.

(b)    An application for expungement under this section may be made at whichever of the following times is applicable regarding the offense:

(i)    Except as otherwise provided in division (B)(1)(b)(ii) of this section, if the offense is a misdemeanor, at the expiration of one year after the offender's final discharge;

(ii)    If the offense is a minor misdemeanor, at the expiration of six months after the offender's final discharge;

(iii)   If the offense is a felony, at the expiration of ten years after the time specified in division (B)(1)(a) of this section at which the person may file an application for sealing with respect to that felony offense.

(2)    Any person who has been arrested for any misdemeanor offense and who has effected a bail forfeiture for the offense charged may apply to the court in which the misdemeanor criminal case was pending when bail was forfeited for the sealing or expungement of the record of the case that pertains to the charge. Except as provided in section 2953.61 of the Revised Code, the application may be filed at whichever of the following times is applicable regarding the offense:

(a)    An application for sealing under this section may be made at any time after the date on which the bail forfeiture was entered upon the minutes of the court or the journal, whichever entry occurs first.

(b)     An application for expungement under this section may be made at whichever of the following times is applicable regarding the offense:

(i)     Except as provided in division (B)(2)(b)(ii) of this section, at any time after the expiration of one year from the date on which the bail forfeiture was entered upon the minutes of the court or the journal, whichever entry occurs first;

(ii)    If the offense is a minor misdemeanor, at any time after the expiration of six months from the date on which the bail forfeiture was entered upon the minutes of the court or the journal, whichever entry occurs first.

(C)  Upon the filing of an application under this section, the court shall set a date for a hearing and shall notify the prosecutor for the case of the hearing on the application not less than sixty days prior to the hearing. Pursuant to the Ohio Constitution, the prosecutor shall provide timely notice of the application and the date and time of the hearing to a victim and victim's representative, if applicable, if the victim or victim's representative requested notice of the proceedings in the underlying case. The court shall hold the hearing not less than forty-five days and not more than ninety days

from the date of the filing of the application. The prosecutor may object to the granting of the application by filing a written objection with the court not later thirty days prior to the date set for the hearing. The prosecutor shall specify in the objection the reasons for believing a denial of the application is justified. The victim, victim's representative, and victim's attorney, if applicable, may be present and heard orally, in writing, or both at any hearing under this section. The court shall direct its regular probation officer, a state probation officer, or the department of probation of the county in which the applicant resides to make inquiries and written reports as the court requires concerning the applicant. The probation officer or county department of probation that the court directs to make inquiries and written reports as the court requires concerning the applicant shall determine whether or not the applicant was fingerprinted at the time of arrest or under section 109.60 of the Revised Code. If the applicant was so fingerprinted, the probation officer or county department of probation shall include with the written report a record of the applicant's fingerprints. If the applicant was convicted of or pleaded guilty to a violation of division (A)(2) or (B) of section 2919.21 of the Revised Code, the probation officer or county department of probation that the court directed to make inquiries concerning the applicant shall contact the child support enforcement agency enforcing the applicant's

obligations under the child support order to inquire about the offender's compliance with the child support order.

(D)

    (1)    At the hearing held under division (C) of this section, the court shall do each of the following:

        (a)    Determine whether the applicant is pursuing sealing or expunging a conviction of an offense that is prohibited under division (A) of this section or whether the forfeiture of bail was agreed to by the applicant and the prosecutor in the case, and determine whether the application was made at the time specified in division (B)(1)(a) or (b) or division (B)(2)(a) or (b) of this section that is applicable with respect to the application and the subject offense;

        (b)    Determine whether criminal proceedings are pending against the applicant;

        (c)    Determine whether the applicant has been rehabilitated to the satisfaction of the court;

        (d)    If the prosecutor has filed an objection in accordance with division (C) of this section, consider the reasons against

granting the application specified by the prosecutor in the objection;

(e) If the victim objected, pursuant to the Ohio Constitution, consider the reasons against granting the application specified by the victim in the objection;

(f) Weigh the interests of the applicant in having the records pertaining to the applicant's conviction or bail forfeiture sealed or expunged against the legitimate needs, if any, of the government to maintain those records;

(g) Consider the oral or written statement of any victim, victim's representative, and victim's attorney, if applicable;

(h) If the applicant was an eligible offender of the type described in division (A)(3) of section 2953.36 of the Revised Code as it existed prior to the effective date of this amendment, determine whether the offender has been rehabilitated to a satisfactory degree. In making the determination, the court may consider all of the following:

(i) The age of the offender;

(ii) The facts and circumstances of the offense;

(iii)   The cessation or continuation of criminal behavior;

(iv)   The education and employment of the offender;

(v)   Any other circumstances that may relate to the offender's rehabilitation.

(2)   If the court determines, after complying with division (D)(1) of this section, that the offender is not pursuing sealing or expunging a conviction of an offense that is prohibited under division (A) of this section or that the forfeiture of bail was agreed to by the applicant and the prosecutor in the case, that the application was made at the time specified in division (B)(1)(a) or (b) or division (B)(2)(a) or (b) of this section that is applicable with respect to the application and the subject offense, that no criminal proceeding is pending against the applicant, that the interests of the applicant in having the records pertaining to the applicant's conviction or bail forfeiture sealed or expunged are not outweighed by any legitimate governmental needs to maintain those records, and that the rehabilitation of the applicant has been attained to the satisfaction of the court, both of the following apply:

(a)   The court, except as provided in division (D)(4) or (5) of this section or division (D), (F), or (G) of section 2953.34 of the Revised Code, shall order all official records of the case that

pertain to the conviction or bail forfeiture sealed if the application was for sealing or expunged if the application was for expungement and, except as provided in division (C) of section 2953.34 of the Revised Code, all index references to the case that pertain to the conviction or bail forfeiture deleted and, in the case of bail forfeitures, shall dismiss the charges in the case.

(b)     The proceedings in the case that pertain to the conviction or bail forfeiture shall be considered not to have occurred and the conviction or bail forfeiture of the person who is the subject of the proceedings shall be sealed if the application was for sealing or expunged if the application was for expungement, except that upon conviction of a subsequent offense, a sealed record of prior conviction or bail forfeiture may be considered by the court in determining the sentence or other appropriate disposition, including the relief provided for in sections 2953.31, 2953.32, and 2953.34 of the Revised Code.

(3)     An applicant may request the sealing or expungement of the records of more than one case in a single application under this section. Upon the filing of an application under this section, the applicant, unless the

applicant presents a poverty affidavit showing that the applicant is indigent, shall pay an application fee of fifty dollars and may pay a local court fee of not more than fifty dollars, regardless of the number of records the application requests to have sealed or expunged. If the applicant pays a fee, the court shall pay three-fifths of the fee collected into the state treasury, with half of that amount credited to the attorney general reimbursement fund created by section 109.11 of the Revised Code. If the applicant pays a fee, the court shall pay two-fifths of the fee collected into the county general revenue fund if the sealed or expunged conviction or bail forfeiture was pursuant to a state statute, or into the general revenue fund of the municipal corporation involved if the sealed or expunged conviction or bail forfeiture was pursuant to a municipal ordinance.

(4)    If the court orders the official records pertaining to the case sealed or expunged, the court shall do one of the following:

(a)    If the applicant was fingerprinted at the time of arrest or under section 109.60 of the Revised Code and the record of the applicant's fingerprints was provided to the court under division (C) of this section, forward a copy of the sealing or expungement order and the record of the applicant's

fingerprints to the bureau of criminal identification and investigation.

(b)    If the applicant was not fingerprinted at the time of arrest or under section 109.60 of the Revised Code, or the record of the applicant's fingerprints was not provided to the court under division (C) of this section, but fingerprinting was required for the offense, order the applicant to appear before a sheriff to have the applicant's fingerprints taken according to the fingerprint system of identification on the forms furnished by the superintendent of the bureau of criminal identification and investigation. The sheriff shall forward the applicant's fingerprints to the court. The court shall forward the applicant's fingerprints and a copy of the sealing or expungement order to the bureau of criminal identification and investigation.

Failure of the court to order fingerprints at the time of sealing or expungement does not constitute a reversible error.

(5)    Notwithstanding any other provision of the Revised Code to the contrary, when the bureau of criminal identification and investigation receives notice from a court that the record of a conviction or bail forfeiture has been expunged under this section, the bureau of criminal

identification and investigation shall maintain a record of the expunged conviction record for the limited purpose of determining an individual's qualification or disqualification for employment in law enforcement. The criminal identification and investigation shall not be compelled by the court to destroy, delete, or erase those records so that the records are permanently irretrievable. These records may only be disclosed or provided to law enforcement for the limited purpose of determining an individual's qualification or disqualification for employment in law enforcement. When any other entity other than the bureau of criminal identification and investigation receives notice from a court that the record of a conviction or bail forfeiture has been expunged under this section, the entity shall destroy, delete, and erase the record as appropriate for the record's physical or electronic form or characteristic so that the record is permanently irretrievable.

**O.R.C. § 2953.33 (2009): Rights and Privileges Restored; Answering Questions**

A.     Except as provided in division (G) of section 2953.32 of the Revised Code, an order to seal the record of a person's conviction restores the person who is the subject of the order to all rights and privileges not otherwise restored by

termination of the sentence or community control sanction or by final release on parole or post-release control.

B.     In any application for employment, license, or other right or privilege, any appearance as a witness, or any other inquiry, except as provided in division (E) of section 2953.32 and in section 3319.292 [3319.29.2] of the Revised Code, a person may be questioned only with respect to convictions not sealed, bail forfeitures not expunged under section 2953.42 of the Revised Code as it existed prior to June 29, 1988, and bail forfeitures not sealed, unless the question bears a direct and substantial relationship to the position for which the person is being considered.

**O.R.C. § 2967.03 (2024): Duties and Powers As To Pardon, Commutation, Reprieve or Parole**

The adult parole authority may exercise its functions and duties in relation to the pardon, commutation of sentence, or reprieve of a convict upon direction of the governor or upon its own initiative. It may exercise its functions and duties in relation to the parole of a prisoner who is eligible for parole upon the initiative of the head of the institution in which the prisoner is confined or upon its own initiative. When a prisoner becomes eligible for parole, the head of the institution in which the prisoner is confined shall notify the authority in the manner prescribed by the authority. The authority may investigate and

examine, or cause the investigation and examination of, prisoners confined in state correctional institutions concerning their conduct in the institutions, their mental and moral qualities and characteristics, their knowledge of a trade or profession, their former means of livelihood, their family relationships, and any other matters affecting their fitness to be at liberty without being a threat to society.

The authority may recommend to the governor the pardon, commutation of sentence, or reprieve of any convict or prisoner or grant a parole to any prisoner for whom parole is authorized, if in its judgment there is reasonable ground to believe that granting a pardon, commutation, or reprieve to the convict or paroling the prisoner would further the interests of justice and be consistent with the welfare and security of society. However, the authority shall not recommend a pardon or commutation of sentence, or grant a parole to, any convict or prisoner until the authority has complied with the applicable notice requirements of sections 2930.16 and 2967.12 of the Revised Code and until it has considered any statement made by a victim or a victim's representative that is relevant to the convict's or prisoner's case and that was sent to the authority pursuant to section 2930.17 of the Revised Code, any other statement made by a victim or a victim's representative that is relevant to the convict's or prisoner's case and that was received by the authority after

it provided notice of the pendency of the action under sections 2930.16 and 2967.12 of the Revised Code, and any written statement of any person submitted to the court pursuant to division (I) of section 2967.12 of the Revised Code. If a victim, victim's representative, or the victim's spouse, parent, sibling, or child appears at a full board hearing of the parole board and gives testimony as authorized by section 5149.101 of the Revised Code, the authority shall consider the testimony in determining whether to grant a parole. The trial judge and prosecuting attorney of the trial court in which a person was convicted shall furnish to the authority, at the request of the authority, a summarized statement of the facts proved at the trial and of all other facts having reference to the propriety of recommending a pardon or commutation or granting a parole, together with a recommendation for or against a pardon, commutation, or parole, and the reasons for the recommendation. The trial judge, the prosecuting attorney, specified law enforcement agency members, and a representative of the prisoner may appear at a full board hearing of the parole board and give testimony in regard to the grant of a parole to the prisoner as authorized by section 5149.101 of the Revised Code. All state and local officials shall furnish information to the authority, when so requested by it in the performance of its duties.

The adult parole authority shall exercise its functions and duties in relation to the release of prisoners who are serving a definite prison term as a stated prison term in accordance with section 2967.28 of the Revised Code, and the authority and the department of rehabilitation and correction shall exercise their functions and duties in relation to the release of prisoners who are serving a non-life felony indefinite prison term as a stated prison term in accordance with sections 2967.271 and 2967.28 of the Revised Code.

**O.R.C. § 2967.04 (2024): Pardons and Commutations**

A.    A pardon or commutation may be granted upon such conditions precedent or subsequent as the governor may impose, which conditions shall be stated in the warrant. Such pardon or commutation shall not take effect until the conditions so imposed are accepted by the convict or prisoner so pardoned or having a sentence commuted, and the convict's or prisoner's acceptance is indorsed upon the warrant, signed by the prisoner or convict, and attested by one witness. Such witness shall go before the clerk of the court of common pleas in whose office the sentence is recorded and prove the signature of the convict. The clerk shall thereupon record the warrant, indorsement, and proof in the journal of the court, which record, or a duly certified transcript thereof, shall be evidence of such pardon or commutation, the conditions thereof, and the acceptance of the conditions.

B.    An unconditional pardon relieves the person to whom it is granted of all disabilities arising out of the conviction or convictions from which it is granted. For purposes of this section, "unconditional pardon" includes a conditional pardon with respect to which all conditions have been performed or have transpired.

C.    In the case of an unconditional pardon, the governor may include as a condition of the pardon that records related to the conviction be sealed as if the records are related to an offense that is eligible to be sealed. The governor may issue a writ for the records related to the pardoned conviction or convictions to be sealed. However, such a writ shall not seal the records required to be kept under division (E) of section 107.10 of the Revised Code and shall not have any impact on the governor's office or on reports required to be made under law. Other than the records required to be kept under division (E) of section 107.10 of the Revised Code, no records of the governor's office related to a pardon that have been sealed under this division are subject to public inspection unless directed by the governor. Inspection of the records or disclosure of information contained in the records may be made pursuant to division (A) of section 2953.34 of the Revised Code or as the governor may direct.  A disclosure of records sealed under a writ issued by the governor is not a criminal offense.

**O.R.C. § 2967.12 (2024): Notice of Pendency of Pardon, Commutation, or Parole Sent to Prosecutor and Court**

A.    Except as provided in division (G) of this section, at least sixty days before the adult parole authority recommends any pardon or commutation of sentence, or grants any parole, the authority shall provide a notice of the pendency of the pardon, commutation, or parole, setting forth the name of the person on whose behalf it is made, the offense of which the person was convicted or to which the person pleaded guilty, the time of conviction or the guilty plea, and the term of the person's sentence, to the prosecuting attorney and the judge of the court of common pleas of the county in which the indictment against the person was found. If there is more than one judge of that court of common pleas, the authority shall provide the notice to the presiding judge. Upon the request of the prosecuting attorney or of any law enforcement agency, the authority shall provide to the requesting prosecuting attorney and law enforcement agencies an institutional summary report that covers the subject person's participation while confined in a state correctional institution in training, work, and other rehabilitative activities and any disciplinary action taken against the person while so confined. The department of rehabilitation and correction may utilize electronic means to provide this notice. The department of rehabilitation and

correction, at the same time that it provides the notice to the prosecuting attorney and judge under this division, also shall post on the database it maintains pursuant to section 5120.66 of the Revised Code the offender's name and all of the information specified in division (A)(1)(c)(iii) of that section.

B.    If a request for notification has been made pursuant to section 2930.16 of the Revised Code or if division (H) of this section applies, the office of victim services or the adult parole authority also shall provide notice to the victim or the victim's representative at least sixty days prior to recommending any pardon or commutation of sentence for, or granting any parole to, the person. The notice shall include the information required by division (A) of this section and may be provided by telephone or through electronic means. The notice also shall inform the victim or the victim's representative that the victim or representative may send a written statement relative to the victimization and the pending action to the adult parole authority and that, if the authority receives any written statement prior to recommending a pardon or commutation or granting a parole for a person, the authority will consider the statement before it recommends a pardon or commutation or grants a parole. If the person is being considered for parole, the notice shall inform the victim or the victim's representative that a full

board hearing of the parole board may be held and that the victim or victim's representative may contact the office of victims' services for further information. If the person being considered for parole was convicted of or pleaded guilty to a violation of section 2903.01 or 2903.02 of the Revised Code, an offense of violence that is a felony of the first, second, or third degree, or an offense punished by a sentence of life imprisonment, the notice shall inform the victim of that offense, the victim's representative, or a member of the victim's immediate family that the victim, the victim's representative, and the victim's immediate family have the right to give testimony at a full board hearing of the parole board and that the victim or victim's representative may contact the office of victims' services for further information.

C.     When notice of the pendency of any pardon, commutation of sentence, or parole has been provided to a judge or prosecutor or posted on the database as required in division (A) of this section and a hearing on the pardon, commutation, or parole is continued to a date certain, the authority shall provide notice of the further consideration of the pardon, commutation, or parole at least sixty days before the further consideration. The notice of the further consideration shall be provided to the proper judge and prosecuting attorney at least sixty days before the further consideration, and may be

provided using electronic means, and, if the initial notice was posted on the database as provided in division (A) of this section, the notice of the further consideration shall be posted on the database at least sixty days before the further consideration. If the prosecuting attorney or a law enforcement agency was provided a copy of the institutional summary report relative to the subject person under division (A) of this section, the authority shall include with the notice of the further consideration sent to the prosecuting attorney any new information with respect to the person that relates to activities and actions of the person that are of a type covered by the report and shall send to the law enforcement agency a report that provides notice of the further consideration and includes any such new information with respect to the person. When notice of the pendency of any pardon, commutation, or parole has been given as provided in division (B) of this section and the hearing on it is continued to a date certain, the authority shall give notice of the further consideration to the victim or the victim's representative in accordance with section 2930.03 of the Revised Code.

D.    In case of an application for the pardon or commutation of sentence of a person sentenced to capital punishment, the governor may modify the requirements of notification and publication if there is not sufficient time

for compliance with the requirements before the date fixed for the execution of sentence.

E.   If an offender is serving a prison term imposed under division (A)(3), (B)(1)(a), (b), or (c), (B)(2)(a), (b), or (c), or (B)(3)(a), (b), (c), or (d) of section 2971.03 of the Revised Code and if the parole board terminates its control over the offender's service of that term pursuant to section 2971.04 of the Revised Code, the parole board immediately shall provide written notice of its termination of control or the transfer of control to the entities and persons specified in section 2971.04 of the Revised Code.

F.   The failure of the adult parole authority to comply with the notice or posting provisions of division (A), (B), or (C) of this section or the failure of the parole board to comply with the notice provisions of division (E) of this section do not give any rights or any grounds for appeal or post- conviction relief to the person serving the sentence.

G.   Divisions (A), (B), and (C) of this section do not apply to any release of a person that is of the type described in division (B)(2)(b) of section 5120.031 of the Revised Code.

H.   If a defendant is incarcerated for the commission of aggravated murder, murder, or an offense of violence that is a felony of the first, second, or third

degree or is under a sentence of life imprisonment, except as otherwise provided in this division, the notice described in division (B) of this section shall be given to the victim or victim's representative regardless of whether the victim or victim's representative has made a request for notification. The notice described in division (B) of this section shall not be given under this division to a victim or victim's representative if the victim or victim's representative has requested pursuant to division (B)(2) of section 2930.03 of the Revised Code that the victim or the victim's representative not be provided the notice. The notice described in division (B) of this section does not have to be given under this division to a victim or victim's representative if notice was given to the victim or victim's representative with respect to at least two prior considerations of pardon, commutation, or parole of a person and the victim or victim's representative did not provide any written statement relative to the victimization and the pending action, did not attend any hearing conducted relative to the pending action, and did not otherwise respond to the office with respect to the pending action. Regardless of whether the victim or victim's representative has requested that the notice described in division (B) of this section be provided or not be provided, the office of victim services or adult parole authority shall give similar notice to the law enforcement agency that arrested the defendant if any officer of

that agency was a victim of the offense and to any member of the victim's immediate family who requests notification. If notice is to be given under this division, the office or authority may give the notice by any reasonable means, including regular mail, telephone, and electronic mail, in accordance with division (D)(1) of section 2930.16 of the Revised Code. If the notice is based on an offense committed prior to March 22, 2013, the notice to the victim or victim's representative also shall include the opt-out information described in division (D)(1) of section 2930.16 of the Revised Code. The office or authority, in accordance with division (D)(2) of section 2930.16 of the Revised Code, shall keep a record of all attempts to provide the notice, and of all notices provided, under this division.

Division (H) of this section, and the notice-related provisions of divisions (E)(2) and (K) of section 2929.20, division (D)(1) of section 2930.16, division (E)(1)(b) of section 2967.19 as it existed prior to the effective date of this amendment, division (A)(3)(b) of section 2967.26, division (D)(1) of section 2967.28, and division (A)(2) of section 5149.101 of the Revised Code enacted in the act in which division (H) of this section was enacted, shall be known as "Roberta's Law."

I.  In addition to and independent of the right of a victim to make a statement as described in division (A) of this section or pursuant to section 2930.17 of

the Revised Code or to otherwise make a statement, the authority for a judge or prosecuting attorney to furnish statements and information, make recommendations, and give testimony as described in division (A) of this section, the right of a prosecuting attorney, judge, or victim to give testimony or submit a statement at a full parole board hearing pursuant to section 5149.101 of the Revised Code, and any other right or duty of a person to present information or make a statement, any person may send to the adult parole authority at any time prior to the authority's recommending a pardon or commutation or granting a parole for the offender a written statement relative to the offense and the pending action.

J.   As used in this section, "victim's immediate family" means the mother, father, spouse, sibling, or child of the victim, provided that in no case does "victim's immediate family" include the offender with respect to whom the notice in question applies.